STEPHEN EMERSON, and others, *vs.* EMMA C. SHORES.

Kennebec.    Opinion April 10, 1901.

*Deed.    Trees.    License.    Contract.*

Growing timber forms a part of the realty and, like any other part of the estate, may be separated from the rest by express reservation or grant. When so separated it retains its distinctive character as an incident of real property as long as it remains uncut; but when cut and severed from the soil, it becomes personal property to which title may be acquired, as in case of other chattels by simple contracts either oral or written.

It has accordingly become settled law under the decisions of this court, and by the great weight of authority elsewhere, that parol or simple contracts for the sale of growing wood or timber, to be cut and removed from the land by the purchaser, are not to be construed as intended by the parties to convey any interest in land, but as executory contracts for the sale of the timber after it shall have been severed from the soil and converted into chattel property, together with a license to enter upon land for the purpose of cutting and removing it.

It is equally well settled that while the license to enter and cut timber, thus created by parol or simple contracts, is irrevocable as to that part of the timber which has been severed from the land in execution of the contract, yet while it remains executory, as to the wood or timber not yet severed from the land, it is revocable not only at the will of the owner, but by his death or by his conveyance of the land without reservation.

On report.    Judgment for plaintiffs.

Assumpsit for breach of contract for the sale of standing trees. The case was reported from the Superior Court for Kennebec county.

*C. F. Johnson,* for plaintiffs.

*S. S. and F. E. Brown,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

WHITEHOUSE, J.    In this action of assumpsit, the plaintiffs seek to recover damages for the breach of a contract for the sale of standing wood and timber. January 9th, 1897, the defendant was

the owner of the wood lot in question and gave the plaintiffs the following memorandum, signed by her, viz:

"This is to certify that I have sold the growth on the fifty-acre lot, known as the Joseph Hurd lot to Stephen Emerson, Ross Paul and James Spaulding, for which I give them five years to get the growth off in."

During the winter of 1897, and the two following winters, the plaintiffs, by virtue of this agreement, cut and removed a part of the trees standing on the lot. But in February, 1899, the defendant without the knowledge or consent of the plaintiffs conveyed her farm including this wood lot, by deed of warranty to Chas. L. Withee, making no reference in the deed to this agreement with the plaintiffs, and no reservation of the standing trees on the wood lot in question. In May following, Withee conveyed the same premises to Stephen A. Nye, also, by deed of warranty without any reservation or exceptions; but Nye made the purchase for Abel Spaulding and gave to Spaulding's wife a bond for a deed upon the payment of $3531. Abel Spaulding, thereupon, entered into possession of the farm. In the fall or early winter of 1899, the plaintiffs entered upon the lot in question for the purpose of cutting and removing the trees then standing, but were forbidden to do so by Abel Spaulding. The evidence also tended to show that, when the defendant conveyed the property to Withee, she informed him of her contract with the plaintiffs, and that Withee took the deed with the understanding that the plaintiffs were to cut and remove the growth according to the terms of their contract. There was also evidence that information of the plaintiffs' contract was communicated to Nye and Abel Spaulding, and that Nye gave Withee to understand that the plaintiffs would have the benefit of their contract with the defendant. But the case fails to show that either Withee, or Nye, or Spaulding, ever made any agreement with the plaintiffs in regard to their right to cut the standing trees after the defendant's conveyance of the lot. The only contract ever made by the plaintiffs with any one, authorizing them to cut and remove the standing trees, was that evidenced by the above memorandum signed by the defendant.

The question, thus presented for determination, is whether the defendant's conveyance of the land by deed of warranty without reservation of the trees standing on the lot, but with an oral notice to her grantee that she had sold the standing growth, operated as a revocation of her license to the plaintiffs to cut off the wood and timber, and as a breach of her contract with the plaintiffs.

It is elementary knowledge, that growing timber forms a part of the realty, and, like any other part of the estate, may be separated from the rest by express reservation or grant; that even when so separated, it retains its distinctive character as an incident of real property so long as it remains uncut; but when cut and severed from the soil, it becomes personal property to which title may be acquired, as in case of other chattels, by simple contracts either oral or written. It has accordingly become settled law under the decisions of this court, and by the great weight of authority elsewhere, that parol or simple contracts for the sale of growing wood or timber, to be cut and removed from the land by the purchaser, are not to be construed as intended by the parties to convey any interest in land, but as executory contracts for the sale of the timber after it shall have been severed from the soil and converted into chattel property, together with a license to enter upon the land for the purpose of cutting and removing it. Hence, an oral agreement for such a purpose is not regarded as within the statute of frauds.

It is equally well settled, that while the license to enter and cut timber, thus created by parol or simple contracts, is irrevocable as to that part of the timber which has been severed from the land in execution of the contract, yet while it remains executory, as to the wood or timber not yet severed from the land, it is revocable not only at the will of the owner, but by his death or by his conveyance of the land without reservation. *Buker* v. *Bowden*, 83 Maine, 69; *Banton* v. *Shorey*, 77 Maine, 48; *Russell* v. *Richards*, 10 Maine, 429; *Folsom* v. *Moore*, 19 Maine, 252; *Brown* v. *Dodge*, 32 Maine, 167; *Drake* v. *Wells*, 11 Allen, 141; *Giles* v. *Simonds*, 15 Gray, 441; *Douglas* v. *Shumway*, 13 Gray, 498; *White* v. *Foster*, 102 Mass. 375; *Fletcher* v. *Livingston*, 153 Mass.

388; *Cook* v. *Stearns*, 11 Mass. 533; 13 Am. & Eng. Enc. of Law (1st Ed.) p. 555.

In *Drake* v. *Wells*, supra, it was held, that if the owner of land for a valuable consideration orally licenses another to cut off within a certain time the trees standing upon it, and afterwards executes an absolute deed of the land to a third person, such deed when made known to the licensee will operate as a revocation of the license, although the grantee had knowledge of it. In the opinion the court say: "The whole rests in contract. A revocation of the license to enter on the land does not defeat any valid title; it does not deprive an owner of chattels of his property in, or possession, of them. The contract being still executory no title has passed to the vender, and the refusal of the vender to permit the vendee to enter on the land, for the purpose of disconnecting from the freehold the property agreed to be sold, is only a breach of contract, the remedy for which is an action for damages."

The distinction sought to be made, in behalf of the defendant, between an oral agreement for the sale of standing trees with a license to cut and remove them within a specified time, and an unsealed written agreement for the same purpose, is not in harmony with elementary principles, and is not supported by the citation of any authorities. At common law, apart from the statute of frauds, there is no distinction between unsealed written and oral contracts. For whether they are written or only spoken, they are in law, if not sealed, equally, and only, parol contracts. A present legal interest in real property can only be granted in this state by an instrument under seal. In two of the cases above cited, the contracts for the sale of the standing trees there in question, as in the case at bar, were evidenced by written bills of sale.

In *Fletcher* v. *Livingston*, 153 Mass. 388, the owner of a tract of woodland agreed in writing for a valuable consideration to sell to the plaintiff all the wood and timber standing on it "with one year's time to get it off," and the court said in the opinion: "It is well settled that a contract, like that relied on by the plaintiff, does not immediately pass a title to property, and is not a sale or a contract for a sale of an interest in land, but an executory agree-

ment for the sale of chattels to take effect when the wood and timber are severed from the land, with a license to enter and cut the trees and remove them. Such a contract if oral, is not within the statute of frauds, and its construction is the same as if it were in writing."

In *Douglas* v. *Shumway*, 13 Gray, 498, a bill of sale of standing wood and timber was given by the owner of the land, as in the case at bar, with a license to remove it within a specified time, and this written, but unsealed instrument was construed by the court as having the same force and effect that an oral agreement for the same purpose would have had.

In the case at bar the plaintiffs had no knowledge of the defendant's conveyance of the land until after it was made, and never waived any rights acquired under their parol contract for the standing growth. They were not parties to any private oral arrangements the defendant may have had with her grantee, or his successors in title, in regard to their recognition of the plaintiff's claim. There was no privity of contract between such grantees and the plaintiffs, and where there is no privity of contract, no action will lie. The defendant's conveyance of the land, without any reservation of the standing growth, operated as a revocation of the plaintiffs' license to enter for the purpose of cutting and removing the trees, and any such entry by them for that purpose against the express prohibition of the owners of the land would have been a trespass. Whether the defendant has any remedy in law or equity against her grantee for his failure to protect the rights of the plaintiffs by a reservation in his deed to his successors in accordance with any oral agreement he may have made with her, is a question not now before the court. The plaintiffs' remedy is an action for damages against the defendant for a breach of her contract with them.

The uncontroverted testimony introduced by the plaintiffs, in relation to damages, shows that the value of the growth now standing on the lot exceeds one hundred dollars, the amount named as the ad damnum in the writ; but the plaintiffs' recovery must be limited to that amount.

*Judgment for the plaintiffs for one hundred dollars.*