## Staunton.

## Johnson and others v. Tazewell Timber Corporation, and others.

September 20, 1923.

1. Trees and Timber—*Whether Conveyance of Timber a Sale of Realty or Personalty—Whether Lien Reserved by Grantor is Lien on Personalty or Realty.*—Where a deed gave the grantee ten years within which to cut and remove timber from a certain boundary of land, with the right of extension of five years for a nominal consideration, the transaction constituted a sale of real estate. But while in the first instance the deed was a conveyance of real estate, yet as the deed authorized the conversion of the standing timber into personalty, the converted property was no longer real estate, and a lien reserved by the grantors was no longer a fixed lien on immovable property, and if it followed the property in its converted form, it could only be as a lien upon personalty.

2. Deeds—*Inconsistent Reservations.*—If a reservation is inconsistent with the powers conferred on the grantee, it is void as to purchasers from the grantee.

3. Trees and Timber—*Deed of Timber—Reservation of Lien.*—In a timber deed the grantor reserved a lien for purchase money on the timber, and on logs cut from the premises, and on the manufactured products thereof.

   *Held:* That if the deed could be so construed as to give effect to the lien on the property in its converted form, without injury to a purchaser, it should be done.

4. Trees and Timber—*Reservation of Lien by Grantor—Rights of Purchaser from Grantee—Case at Bar.*—A timber deed gave the grantee a license to manufacture and remove timber from a certain boundary, but qualified this right by a provision that it should continue only so long as there remained sufficient timber, logs, etc., subject to the grantor's lien to secure the payment of the deferred purchase money notes.

   *Held:* That the qualifying words must be applied to the right of grantors to intervene and stop the shipment of unsold lumber, and not to the rights of a purchaser who had already bought and paid for lumber which had been set aside and delivered to him.

5. TREES AND TIMBER—*Sale of Timber—Reservation of Lien by Grantor on Timber and Manufactured Products of Timber—Rights as Between Grantor and the Purchaser of Manufactured Products—Case at Bar.*—In the instant case grantors sold and conveyed to grantee the standing timber on a certain boundary of land with the right to cut and remove it, and a lien for the unpaid purchase money was reserved on the timber, on the logs cut from the premises, and on the manufactured products, but in the reservation clause it was expressly provided that the reservation should not interfere with the right of the grantee to ship the manufactured products from the premises, so long as there remained sufficient timber and manufactured products to secure the payment of the deferred purchase money. The grantee sold to a third party a large amount of lumber and delivered the lumber to the agent of such third party, who held it for the purchaser on premises leased from the grantor by the grantee and assigned to the agent. The tract from which this lumber sold was cut was about one-sixth of the whole acreage and yielded a large amount of lumber over and above that delivered to the purchaser.

   *Held:* That the purchaser's right to the lumber in the hands of its agent was superior to the right of the grantors by virtue of the lien reserved in the deed.

6. TREES AND TIMBER—*Reservation of Lien by Grantor—Purchaser of Timber from Grantee.*—Where grantors by deed had invested their grantee with the right to cut and sell timber from a certain boundary and had reserved a lien upon the timber and manufactured products thereof for deferred payments, they could not burden a purchaser from the grantee with the duty of ascertaining how much was due to the grantors and whether or not sufficient timber and manufactured products were left on the premises to furnish ample security for the deferred payments. Such a reservation would make every sale at the risk of the purchaser, would defeat the very purpose of the deed, and is inconsistent with the powers granted by the deed.

7. TREES AND TIMBER—*Reservation of Lien by Grantor—Effect of Lien upon Sales by Grantee.*—Where grantors in a timber deed expected and intended that the grantee should manufacture and sell the timber, which was the subject of the deed, a reservation by the grantors of a lien upon the timber and manufactured products thereof to secure deferred payments by the grantee is a reservation between the parties themselves of a right on the part of the grantors at any time to intervene and prevent future sales if that should be necessary for the protection of the security for their debt. Prior to such intervention, the grantors must be deemed to have waived their lien as to consummated sales.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Jackson & Henson* and *M. P. Farrier*, for the appellants.

*R. O. Crockett*, for the appellees.

BURKS, J., delivered the opinion of the court.

The appellants sold and conveyed to the Tazewell Timber Corporation, by deed bearing date March 20, 1920, the standing timber on a boundary of 5,500 acres of land in Tazewell county, Virginia, and by the same instrument leased to the timber corporation several adjacent small parcels of land for mill sites, storage and other purposes connected with the sawmill operations. The consideration of the deed was $142,524.32, of which $45,433.50 was paid in cash, and for the residue credit was extended for one, two and three years for equal instalments thereof, with interest from date. Among the rights and powers expressly conferred upon the purchaser by said deed was the following: "It is expressly understood and agreed that all the property, rights and privileges herein granted and conveyed, are granted and conveyed to the said party of the second part, its successors and assigns with the full right to convey and transfer all or any of the said property, rights and privileges." The deed also contains the following reservation: "A vendor's lien is hereby expressly retained on the timber herein conveyed, to secure the payment of the unpaid balance of purchase money, and it is agreed

by and between the parties hereto that the lien herein reserved shall continue to attach to the logs after being cut from the premises, and to the manufactured products thereof (whether sawed and stacked on the premises hereinbefore described, or on other lands), but the reservation of said lien shall not interfere with the right of the parties of the second part or their assigns to ship the manufactured products of said timber from the premises, so long as there remains sufficient timber not severed, logs and the manufactured products thereof, subject to the aforesaid lien to amply secure the payment of the deferred purchase money notes at that time remaining unpaid."

By deed dated June 6, 1921, the Tazewell Timber Corporation conveyed and assigned to the Gratton Storage Company the lease it had obtained from the appellants on ten acres of the land which had been acquired from J. Floyd Gillespie, which is one of the small parcels of land hereinbefore mentioned.

At the time of the controversy hereinafter mentioned the Tazewell Timber Corporation had cut the timber on about 900 acres of the land, or about one-sixth of the whole, which had yielded over two and one-half million feet of lumber, of which it had sold one million, eight hundred thousand (1,800,000) feet, to the Maine Lumber Company, Limited, for the sum of $86,000.00.

The undertaking of the Tazewell Timber Corporation to convert so large a quantity of standing timber into merchantable lumber involved the outlay of a large sum of money for machinery, tools, equipment and labor. After unsuccessful attempts elsewhere, it succeeded in securing the needful advance of funds from the Maine Lumber Company, Limited, an English corporation. This was secured under a written agreement dated February 28, 1921, by the terms of which the Tazewell

Timber Corporation agreed to manufacture, sell and deliver to the Maine Lumber Company, "f. o. b. cars, Norfolk and Western railroad siding, Burke's Garden, Virginia, eight hundred thousand (800,000) feet of prime oak, poplar and chestnut at $60.00 per M. and one million (1,000,000) feet of No. 1 common and selects at $38.00 per M., making a total of $86,000.00." The terms and manner of the advances were agreed upon and were carried out. The lumber was to be delivered within eight months, and the Maine Company was to receive the entire output of the Tazewell Timber Company, "of the grades up to the quantity hereinbefore specified," until the whole was delivered, and the Maine Company was given a lien for the performance of the contract upon "all cut logs now upon the premises of the parties of the first part, and upon such logs as may hereinafter be cut during term of this contract, and also said lien shall rest upon all manufactured products of said logs and remain thereon until said manufactured lumber is placed aboard cars at the Norfolk and Western railroad siding, Burke's Garden, Virginia." Afterwards, the Maine Company accepted delivery to the Gratton Storage Company.

The full $86,000.00 was advanced by the Maine Lumber Company, of which $76,000.00 was expended in the purchase and installation of a large band mill and various other necessary equipment for the work, and for payrolls, and $10,000.00 was paid to the appellants on account of deferred payments of purchase money. It is not claimed by the appellants that there was any improper diversion of any part of the $86,-000.00. The Tazewell Timber Corporation sawed a large quantity of logs, of which it manufactured "for account of Maine Lumber Company 1,273,777 feet of lumber," which was stacked upon the ten acre Gillespie

lot aforesaid, which had been conveyed to Gratton
Storage Company, for which it took the receipt of the
Gratton Storage Company, Inc., which receipts were
transferred to the Maine Lumber Company, Limited.

Suit was brought by the appellants to enforce the
lien reserved in their deed of March 20, 1920, and every-
thing was sold that was claimed to be liable to said
lien, except the lumber here in controversy, which had
been stacked as aforesaid, and after giving credit there-
for, there was found to be a balance of about $43,000.00
due to the appellants.

The sole question for consideration is whether or not
the appellants, by virtue of the lien retained in the deed
of March 20, 1920, have a lien upon the lumber in the
hands of the Gratton Storage Company, superior to the
rights of the Maine Lumber Company, Limited.

[1-3] The deed of the appellants gave to the Taze-
well Lumber Corporation ten years within which to cut
and remove the timber from the land, with the right
of extension of five years for a nominal consideration,
and it was argued that this constituted a sale of real
estate. Counsel cited and commented at length upon
*Stuart* v. *Pennis*, 91 Va. 688, 22 S. E. 509; *Hurley* v.
*Hurley*, 110 Va. 34, 65 S. E. 472, 18 Ann. Cas. 968;
*Hurricane Lumber Co.* v. *Lowe*, 110 Va. 383, 66 S. E.
66, and cases from other jurisdictions. No question of
the statute of frauds is involved, as the contract was
in writing, duly signed, and the point is immaterial as
the whole object of the deed, as stated by the appel-
lants in the petition for the appeal, "was for the pur-
pose of converting the same into lumber and disposing
of the same," and express authority therefor was con-
ferred by the deed. In no other way could the pur-
chaser enjoy the benefit of its purchase. If it be con-
ceded, therefore, that the deed was a conveyance of

real estate in the first instance, the deed authorized its conversion into personalty. The converted property was no longer real estate, and the lien reserved was no longer a fixed lien on immovable property, and if the lien followed it in its converted form, it could only be as a lien upon personalty, by whatever name it may be called. The extent of the lien, however, if third persons were charged with notice of it by reason of the recordation of the deed, could not exceed the reservation in the deed, and if the reservation was inconsistent with powers conferred on the grantee, it was void as to purchasers from the grantee. The case is within the principle of *Consolidated Tramway Co.* v. *Germania Bank*, 121 Va. 331, 93 S. E. 572, and *Boice* v. *Finance & Guaranty Corp.*, 127 Va. 563, 102 S. E. 591, 10A. L. R. 654, and cases cited. But if the deed can be so construed as to give effect to the lien on the property in its converted form, without injury to the purchaser, the Maine Lumber Company, Limited, it should be done. This was in effect done by the trial court when it permitted the appellants to enforce their lien against the felled trees which had not been disposed of at the time the appellants brought their suit.

[4, 5] The standing timber was granted to the Tazewell Lumber Corporation with the right to cut and remove it, and a lien for the unpaid purchase money was reserved on the timber, on the logs cut from the premises, and on the manufactured products thereof, but in the same clause of reservation it was expressly provided that "the reservation of said lien shall not interfere with the right of the parties of the second part or their assigns to ship the manufactured products of said timber from the premises." It is true that this language is intimately followed, in the same sentence, with the words "so long as there remains sufficient timber not severed,

logs and the manufactured products thereof, subject to the aforesaid lien to amply secure the payment of the deferred purchase money notes at the time remaining unpaid." But a license to manufacture and remove had been granted, and the qualifying words must be applied to the right of the vendors to intervene and stop the shipment of unsold lumber, and not to the right of a purchaser who had already bought and paid for lumber which had been set apart and delivered to him. At the time the appellants brought their suit, to enjoin cutting and removing any more timber from the land, the Maine Lumber Company, Limited, had bought and paid for the lumber in controversy, and had accepted delivery thereof to the Gratton Storage Company, for its benefit. The vendors knew at all times how much was due them and could at any time before sales were made intervene to stop further sales and protect the security for their debt, but it would be unreasonable to require every purchaser from the Tazewell Lumber Corporation to ascertain at his peril the extent to which that company was indebted to the appellants, and the probable market value of the timber and lumber remaining unsold at the date of such purchase. The unreasonableness of such a requirement is made apparent by the facts of this case. The Tazewell Lumber Corporation began operations in April, 1921, and the lumber in controversy was apparently the first sale made by it, and was of 1,800,000 feet at the price of $86,000.00. The tract from which it was cut was about one-sixth of the whole acreage and yielded 1,329,602 feet over and above what was delivered to the Maine Lumber Company, and which went into the hands of a receiver of the company. When the lumber was delivered to the Maine Lumber Company, there had been paid to the appellants the cash payment of $45,433.50 and the first

deferred instalment of $32,363.61 was past due. There is no evidence that the Maine Lumber Company knew that this had not been fully paid, though as a matter of fact only $10,000.00 of it had been paid. With such a margin of apparent security it would have been unreasonable to have required the Maine Lumber Company to have enquired into the state of the market of standing timber, and the state of the accounts between the appellants and their vendee. The appellants say in their bill, "that at the time they so sold the said timber to the said defendant, timber and lumber of all kinds commanded the very highest prices ever known in the history of our country, and that the price at which said timber was sold by them to the defendant was the full fair value thereof at that time, based on the then market conditions; that since then, the market value of timber products of all kinds has materially declined to not more than sixty per cent of the market value of the same kind of products at that time."

[6] These were facts well known to the appellants, and if they wished to protect their security they should have intervened and asserted their right to enforce their lien, if it attached to the trees after they were felled or the lumber made therefrom, before the rights of third persons attached. They had invested their grantee with the right to cut and sell, and could not burden a purchaser from it with the duty of ascertaining how much was due them and whether or not sufficient was left to furnish ample security for such sum. Such a reservation would make every sale at the risk of the purchaser, would defeat the very purpose of the deed, and is inconsistent with the powers granted by the deed. Every sale of lumber diminished the appellant's security *pro tanto.* They knew this when they made the deed and manifestly intended that sales should be made

and expressly authorized them. The license to cut the trees and sell the manufactured product was the sole consideration of the contract. A large sum of money was paid and promised to be paid for it, and the right would have continued until all of the timber was cut and removed during the life of the contract, unless restricted by the contract. It was so restricted. But the license having been given to "ship the manufactured products of said timber from said premises," the restriction simply fixed the time when the appellants might revoke the license which would otherwise have been irrevocable.

The position now taken that the vendors could give the right to sell and remove the lumber and yet retain a vendor's lien on the lumber sold is an effort—

"To hold with the hare and run with the hounds,"

which cannot be done. The two things are incompatible.

[7] That the grantors expected and intended that the grantee should manufacture and sell the timber cannot be doubted. What then was the intent and extent of the limitation? It was a reservation between the parties themselves of a right on the part of the vendors at any time to intervene and prevent future sales if that should be necessary for the protection of the security for their debt. Prior to such intervention, the vendors must be deemed to have waived their lien as to consummated sales. If, as appellants say in their petition, "the record shows that the purchase of this timber by the Tazewell Timber Corporation was for the purpose of converting the same into lumber and disposing of the same," then the sale to the Maine Lumber Company, Limited, was authorized by the deed, and appellants waived their lien as to that sale and are now estopped from asserting it against the lumber in controversy.

Counsel for the appellee insists that the vendor's lien reserved in the deed was lost by the conversion of the standing trees into lumber as there can be no vendor's lien on a sale of personal estate. He relies for authority chiefly upon the following quotation:

" 'The vendor has no lien on ties manufactured by the purchaser from timber cut from the land, nor upon cord wood cut by the purchaser.' 39 Cyc., page 1806.

" 'Minerals.—The lien extends to minerals, such as coal, iron, limestone, etc., in the mine and under the soil, inasmuch as they are land capable of being embraced in the generic term and subject to the same incidents. When the minerals are mined and severed from the land, they become personalty and the lien will not then cover them, nor would it extend to the severed product of the mine, but it may be enforced against the remainder of the mineral not removed from the mine and embraced in the land. The lien, however, does not attach to anything which is not real estate. It does not apply as against rents and profits, nor against the proceeds of interest sold, nor against anything which has been reduced to personal property by severance from the real estate.' 29 Am. & Eng. Ency. L., p. 747."

In the case in judgment, it is unnecessary to go that far, or to consider the authorities cited. Compare, *Spies v. Butts,* 59 W. Va. 385, 53 S. E. 897. If it be conceded that the reservation contained in the deed applied to the lumber after the trees were felled and converted, and that the recordation of the deed gave constructive notice of its contents, yet when we look to the deed we find that it conferred upon the grantee therein a revocable license to cut and remove the trees. This license the grantors could revoke whenever they found that their security was becoming seriously impaired, but until revoked the cutting and removal were valid,

and the purchasers of the lumber took title thereto discharged of the lien reserved in the deed. The withdrawal of the license did not affect prior sales, but simply cut off the right to cut and remove trees in the future. *Hodgkins* v. *Farrington*, 150 Mass. 19, 22 N. E. 73, 5 L. R. A. 209, 15 Am. St. Rep. 168; *Emerson* v. *Shores*, 95 Me. 237, 49 Atl. 1051, 85 Am. St. Rep. 404. This, we think, is the fair construction of the deed, and of the meaning and intent of the parties as set forth therein.

The foregoing views render it unnecessary to discuss the title acquired by the Maine Lumber Company by the transfer of the warehouse receipts issued by the Gratton Storage Company.

No reference has been made to the connection of W. & S. Job & Co. and the Greenwich Trust Company with the matters in controversy, nor to the several suits in which the litigation has been prosecuted, as they do not affect the results, and such reference might becloud an otherwise clear statement of the facts relating to the only question in controversy.

We find no error in the decree of the circuit court and it is affirmed.

*Affirmed.*