E. T. ROUX, H. L. ASKEW, co-partners as ROUX-ASKEW LUMBER COMPANY, S. B. DENTON, MILLER LUMBER COMPANY, a corporation, and E. T. ROUX as Receiver for .R. L. DOWLING & SONS, INC., *Appellants*, vs. C. W. HOUK, A. B. ELBON and WALLACE TERVIN as Supervisors of

POMELLO DRAINAGE DISTRICT, of Manatee County, PO-
MELLO DRAINAGE DISTRICT, a corporation, and CANAL
CONSTRUCTION COMPANY, a corporation, *Appellees.*

Division A.

Opinion filed April 3, 1931.

*McKay, Withers & Ramsey,* for Appellants;
*John B. Singeltary,* for Appellees.

ELLIS, J.—This is an appeal from an order sustaining a
demurrer to a bill in equity to restrain C. W. Houk and
others as Supervisors of Pomello Drainage District of Man-

atee County, Florida, and Canal Construction Company from cutting and destroying timber belonging to the complainants located on certain lands lying within the Drainage District and from cutting and building ditches and canals until the further order of the court and to assess the damages which complainants allege to have been sustained by them by reason of the construction of canals and the incidental destruction of trees on the lands.

The bill was brought by E. T. Roux and H. L. Askew as copartners under the firm name of Roux-Askew Lumber Company, S. B. Denton and Miller Lumber Company, a Florida Corporation, and E. T. Roux as Receiver, who was appointed in a cause between Roux-Askew Lumber Company and R. L. Dowling & Sons, Inc., a Florida corporation for the foreclosure of a lien alleged to have been held by the complainants. The only parties in interest on the complainant's side seem to be E. T. Roux and H. L. Askew, copartners under the name of Roux-Askew Lumber Company.

As the validity of the proceedings under which the Drainage District proceeded with its work is questioned a brief statement of the facts disclosed by the bill to which the demurrer was sustained is essential. The Pomello Drainage District, which embraces the lands described in the bill was organized under the provisions of the statute law of Florida. C. W. Houk, A. B. Elbon and Wallace Tervin constitute the Board of Supervisors. The Board let a contract to Canal Construction Company to cut certain drainage ditches through the land described. The ditches to be cut were set out in the plans and specifications prepared by an engineering company and presumably adopted by the Board.

A map of the drainage district, in so far as it affects the

lands described, was according to the bill attached as an exhibit and reference to it was made but neither the map nor a copy of it is in this record.

The Board and the Canal Company have entered upon the lands, cut some of the ditches, and in doing so destroyed a number of trees. Some of the ditches are twenty feet deep and quite as wide, the dirt from which is piled along the banks to a great height rendering it impracticable for the complainant who has timber rights on the land to enter and cut and remove the timber without building bridges across the ditches for railroad tracks and to make the wagon roads available for hauling the timber as it is cut.

It is alleged that these activities of the Board of Supervisors and the Canal Company have already resulted in damaging the complainants in a large sum which will ultimately exceed Fifteen Thousand Dollars.

It is alleged that the defendants have conducted no proceedings for the purpose of acquiring the right to enter upon the lands and cut and destroy the timber and to cut the ditches and thus to interfere with the complainants' rights to enter and build their roads; no provision has been made for their compensation nor have the complainants received any compensation for the timber destroyed and the injury to their rights. It is alleged that the District has issued bonds in the sum of Two Hundred and Fifty Thousand Dollars and it will require all, of that amount to complete the construction of the ditches according to the plans and no funds will be left with which to compensate the complainants for the injury sustained by them.

It is alleged that the complainants have no interest in the lands but only have a license to enter and cut the

timber therefrom within a certain specified time as set forth under the contract held by them; that they have had no notice of the defendants' intention to carry on the drainage operations and interfere with the complainants' rights.

No attack is made upon the organization of the District.

The complainants' rights rest upon a written instrument executed by Howard Turpentine Company a copartnership composed of E. E. Edge and others, who owned the land, to C. B. Brim and others under which a license was "given and granted" to Brim and others to enter upon the lands and to cut and remove the timber therefrom upon terms set forth in the writing. It is alleged that the written instrument is recorded in Deed Book 69 page 6 of the Public Records of Manatee County to which reference is prayed for its contents. The instrument was executed in May, 1922. Brim and others in February, 1923, transferred in writing all their rights under the "agreement" to Roux-Denton Lumber Company, a corporation. That instrument is also recorded in the public records of the county.

On the last mentioned date Edge and others, copartners as Howard Turpentine Company, entered into an agreement with Roux-Denton Lumber Company whereby the agreement between that Company and Brim and others to which the Roux-Denton Lumber Company succeeded was "modified, altered and extended" and it is alleged that the Howard Turpentine Company gave and granted to the Roux-Denton Company the "right and license" to enter upon the lands upon certain terms and for certain considerations mentioned. That instrument is also recorded in Deed Book 70 page 233 of the Manatee County records. That instrument contained provisions which it is essential to notice because the rights of the complainants Roux and

Askew as copartners under the name of Roux-Askew Lumber Company are determined by the terms of that instrument.

According to the allegations of the bill the instrument provided in substance, first, that if the purchasers were not in default in payments at a certain date December 31, 1926, they "shall have the right" until December 31, 1929, "to cut and remove the said pine timber" from certain sections of land and certain of the lands lying south of the railroad; second, that if the purchasers were not in default on December 31, 1927, they "shall have the right" to December 31, 1929, "to cut and remove" the timber on certain other lands and the same sections lying north of the railroad; third, that after the expiration of the period of time provided for cutting the timber the "purchaser shall have no rights whatever in any timber now or then on said" lands on "which the cutting period has expired which timber has not been removed therefrom and the title to all timber then remaining thereon shall revert and become vested in the vendors" the Howard Turpentine Company; fourth, the purchaser "covenants and agrees" that as fast as the timber is "cut and removed" from the lands from time to time released to purchaser for "cutting and removing" that the "overcut lands shall immediately from the time that they are cut over be free from any and all rights of the purchaser saving and excepting the rights of ingress and egress reasonably necessary and sufficient to enable the purchaser to cut and remove the remaining timber to the tramway referred to in said timber deed dated May 15, 1922." That was the deed herein before mentioned executed by Howard Turpentine Company to C. B. Brim and others under which a "license was given and granted" to them to enter upon

the lands and to cut and remove the timber therefrom.

The amended bill was filed in this case on July 13, 1928, which was five months before the expiration of the first period for cutting and removing.

Now the Roux-Denton Lumber Company in August, 1923, assigned its interest under the agreement to S. B. Denton, E. T. Roux and H. L. Askew and on the same day Denton assigned his interest to Roux and Askew, who became partners under the name of Roux-Askew Lumber Company, Denton reserving to himself $1.60 per thousand feet board measure of timber cut from the lands.

In December, 1923, Roux-Askew Lumber Company transferred their interest in the contract together with other property to R. L. Dowling for a certain consideration, "Roux-Askew Lumber Company reserving a lien upon all of said property therein and thereby assigned and transferred for the payment of the sums so due and to become due and payable to them from the said R. L. Dowling as therein set forth." Then Dowling assigned a four-fifths interest in the agreement to C. F. Dowling and Julian Dowling and then on December 24, 1923, the Dowlings, R. L., C. F. and Julian, assigned their interest to R. L. Dowling & Sons, Inc., a corporation.

Afterwards the Dowlings and the R. L. Dowling, Inc., defaulted in the payment of sums of money due to Roux-Askew Lumber Company and in February, 1927, that partnership commenced its suit to foreclose the lien reserved to it. A Receiver was appointed in April, 1927. The Receiver "sub-let and transferred the rights under said agreement and license" executed by Howard Turpentine Company to Brim and others to the Miller Lumber Company, a corporation. The foreclosure cause proceeded to a final decree, the "property and assets were sold" and Roux-

Askew Lumber Company became the purchaser and the sale was confirmed by the court.

The bill alleges that all sums due and payable to Howard Turpentine Company and Brim and others under the provisions of the agreements have been paid and there have been no defaults. So the "complainants have the rights and interests in and to said agreements and license" and no other person has any right thereto save the Howard Turpentine Company "who owns the title to said timber subject to the rights of these complainants, as hereinabove set forth, to cut and remove said timber from said tracts at the times and in the manners hereinabove mentioned."

The point in the case is whether the last above quoted clause is a correct statement of the respective interests of the complainants and the Howard Turpentine Company, that is to say, does the Howard Turpentine Company own the title to the uncut timber and the complainants, Roux-Askew Lumber Company, own only a chattel interest therein, that is a mere license to enter upon the land and cut and remove the timber? Or do the complainants own the title to the standing timber as the purchasers of an interest in real estate? If they do they are bound by the proceedings under which the Drainage District was organized, had full notice and their opportunity to be heard. If, on the other hand, their interest is a mere chattel interest which is being damaged by the drainage operations they are entitled to the relief prayed and damages to the chattels appropriated and destroyed by the defendants.

The defendants contend that the allegations of the bill affirmatively show that the interest held by the complainants is an interest in real estate, because a deed from the owner of the land conveying to another a right to enter upon the land and cut and remove the trees is a convey-

ance of real estate. The interest of the complainants therefore is an interest in the land, and special attention is called to the language of the agreement between Howard Turpentine Company and Roux-Denton Lumber Company of February, 1923, modifying and extending the terms of the original instrument from Howard Turpentine Company to Brim and others executed in May, 1922. The language has hereinbefore been quoted as follows: "That after the expiration of the period of time provided for cutting the timber the purchaser shall have no rights whatever in any timber now or then" on said several sections on which the cutting period has expired which timber has not been removed therefrom and "the title to all timber then remaining thereon shall revert and become vested in the vendors," the Howard Turpentine Company.

Several decisions of this Court are cited to the proposition that a sale of timber standing on land is a contract concerning an interest in land within the meaning of the Statute of Frauds, and while a parole sale of standing timber may operate as a license to enter and cut trees it is revoked by a sale and conveyance of the land to a third person. See High v. Jasper Mfg. Co., 57 Fla. 437, 49 South. Rep. 156; Elsberry v. Sexton, 61 Fla. 162, 54 South. Rep. 592; Richbourg v. Ross, 53 Fla. 173, 44 South. Rep. 69; 125 Am. St. Rep. 1061, 12 Ann. Cas. 274; Jenkins v. Lukes, 19 Fla. 148, 45 Am. Rep. 19.

See also Adams v. Malloy, 70 Fla. 491, 70 South. Rep. 463, where the court construing an instrument in writing held by the Malloys under which they asserted title to the timber on certain lands and the right to work and use, cut and remove it for turpentine and sawmill purposes held that the statute regulating conveyances of real estate, Sec. 2448 G.S. 1906 (Sec. 5660 C.G.L. 1927) embraced

leases of land for turpentine privileges for a term of more than two years but held the instrument to be ineffectual as a conveyance of an interest in the homestead real estate because of a defective acknowledgment of the execution of the instrument by the wife of the grantor.

Also Prescott v. Betts, 81 Fla. 538, 88 South. Rep. 385, in which this Court had under consideration a deed which "'granted, bargained, leased and conveyed' unto Cady, his heirs and assigns 'all the timber of all sizes for sawmill purposes, standing and being' upon the lands described for a period of one year.'" There was a covenant that Cady and his assigns should have the right to enter upon the lands with teams, tramroads, railroads and skidders for the purpose of cutting and removing the timber during the continuance of the lease. Under another covenant Cady had a right to erect a sawmill on the lands. The deed also contained a provision that Cady should not have the right to cut the timber until the further payment for said timber shall have been made in the amounts stated, until the full amount of the balance of $1268 and interest thereon shall have been paid. Then followed a list of six payments to be made before cutting on six different tracts of land of forty acres each. There was a provision however that Cady might cut only one of the forties without paying the amount required in the list but no other forty should be cut except as paid for until the balance due of $1268. should be paid.

It was provided that if Cady cut the timber upon any forty before payment in full for that forty then the lease should be void and all the rights of the grantee should cease and all payments made should be retained by the grantor. The deed also contained a covenant of warranty. Betts Company, a corporation, was the owner of the land

and executed the deeds to Cady and Prescott. Cady made
the initial payment of one thousand dollars but made no
other payment under the contract and the timber was cut
promiscuously over the entire tract but the Betts Company
had no knowledge of the fact. Trees were cut from the
land and sawed into cross-ties and piled by Cady at the
railroad station. Betts Company brought an action of re-
plevin for the cross-ties. Cady pleaded not guilty and de-
fended under his deed from Betts, claiming that the title
to the timber passed to him by the delivery of the deed and
as the grantor had not reentered for condition broken the
title remained in Cady who was liable to Betts only on the
covenants. There was judgment for the plaintiff. On writ
of error taken by Prescott the court held that the language
of the deed conveying the timber rights showed that it
was not the intention of the parties to convey the timber ab-
solutely for the "*tenendum* and *habendum* clause of the
deed provided that the grantee should have it only 'for the
full period of one year from the date' of the instrument
This clause was followed by the agreement that the timber
should not be cut until the grantee paid the consideration
as therein set out."

The court recognized the instrument to be a contract
concerning an interest in land in so far as it contemplated
a sale of the standing timber, "but it was one which se-
cured to the defendant the right to cut and remove the
timber only after the payment of the consideration in the
manner set out in the agreement." The court held that
the payment of the price fixed by the contract for each
"forty" was a condition precedent to the defendant's
right of entry for the purpose of removing the timber,
a condition precedent to the title passing. It was held that
the intention of the parties as gathered from the entire

instrument without regard to the order in which the conditions were arranged should control and affirmed the judgment for the plaintiff in replevin.

The case is discussed at some length to show that while a contract for the cutting of timber may be a contract concerning an interest in land so far as it contemplates a sale of the standing timber the intention may not exist between grantor and grantee as expressed by the words of the entire instrument to convey the timber absolutely so that *title* to it would pass by the delivery of the deed. In other words, the theory to which this court held in the Prescott-Betts case, *supra*, is that in contracts for the sale of standing timber to be taken off in a given time under conditions named in the contract the purchaser takes no beneficial interest in the land itself. He only acquires a right of entry on the land during the time specified in the contract for cutting and carrying away the timber. See Sanders v. Clark, 22 Iowa 275; Pease v. Gibson, 6 Me. 81; King v. Merriman, 38 Minn. 47, 35 N.W. Rep. 570; Emerson v. Shores, 95 Me. 237, 49 Atl. Rep. 1051, 85 Am. St. Rep. 404; Gibbs v. Wright, 5 Ala. App. 486, 57 South. Rep. 258.

A sale of timber may be so as to pass to the purchaser a perpetual right to have the timber remain on the land or a perpetual right to enter and remove it. See McNair & Wade Land Co. v. Adams, 54 Fla. 550, 45 South. Rep. 492; Cummer Co. vs. Yager, 75 Fla. 729, 79 South. Rep. 272; McNair & Wade Land Co. v. Parker, 64 Fla. 371, 59 South. Rep. 959.

In the case of Cummer v. Yager, *supra*, the Court, speaking through Mr. Justice West said that this Court is in accord with the holding that a contract may be made between the parties whereby the grantee may take a per-

petual right upon the land of the grantor and remove timber therefrom, but that such an agreement is so unreasonable in its nature that no contract will be held to have that effect unless it is plainly manifest from its terms that such was the intention of the parties. Therefore a deed which does not specify the time within which the timber is to be removed is usually construed as implying that such removal shall be within a reasonable time, when the terms of the conveyance or the circumstances attending the transaction afford a just basis for an adjudication of such an implication or intendment.

And in the case of McNair & Wade Land Co. v. Parker, *supra,* the court construed a contract in the form of a warranty deed conveying for the consideration of one hundred dollars to the McNair & Wade Land Company, its heirs and assigns forever, all the green pine and cypress timber on a certain tract of land with the right to enter on the land with full turpentine and timber privileges and with the right to construct roads and tramroads over the land, the grantors reserving the right to use timber necessary to keep in repair the farm. The habendum clause of the deed was as follows " 'to have and to hold the above granted, bargained and described premises with the appurtenances unto party of the second part, its heirs and assigns to their own proper use, benefit and behoof forever.' " The court held that "As to the interest conveyed by the deed it is plain that it carries no permanent fee simple interest in the land itself. It conveys only the timber growing on the land, which is a kind of servitude which may be lost by non-use or abandonment." See also Livingston v. Drew Lumber Co., 82 Fla. 508, 90 South. Rep. 466.

While a sale of growing trees to be cut and removed

within a definite time may be within the Statute of Frauds in that such a contract creates an uncertain interest *out* of lands, it does not follow that such interest constitutes the owner of it an owner in acreage of lands within the meaning of Sections 1451, 1452 and 1453 of the Compiled General Laws of Florida 1927 relating to the formation of Drainage Districts. While the notice required to be published of the proposed formation of a Drainage District is to "all persons interested" in the lands proposed to be incorporated in the district, the intent and purpose of such notice is to appraise the owners of lands to be reclaimed which lands by reason of their wet or overflowed condition constitute a menace a public health, convenience, welfare, utility or benefit and which by the removal of water therefrom will eliminate such menace and upon which lands an acreage tax shall be levied to pay the expenses of drainage operations necessary to that end. To the owner of such lands the damages are awarded for acquiring rights of way, holding basins and other drainage works of the district. The complainants could not qualify in such proceedings as the owner of such lands. No liability for taxes will ever be incurred by them by reason of the right held by them to remove the trees or the right of ingress or egress to and from the lands. If by reason of the execution of the plans for reclaiming the lands from their wet or overflowed condition the owner's ingress and egress to and from them will be seriously obstructed and his trees destroyed by cutting drains and building holding basins it would be no answer for the Drainage Commissioners to say that the owner of the land had leased these privileges or assigned to another that servitude upon his lands. And if he acquiesces in the appropriation of his lands to such purposes, makes no protest or claim for damages or having

made it receives the damages assessed it would be difficult to understand on what principle he could refuse a corresponding abatement of the contract price to his lessee under a proper showing by the latter.

The Statute of Frauds has no relation to the question involved in these proceedings. It cannot be determinative of the question whether the holder of the lease has such an estate in the lands as to make him a party to the proceedings for the assessment of damages for an appropriation of the lands for drains, rights of way and holding basins. He would sustain the same damage if he were but a mere licensee under a parol agreement, but that position would give him no standing in an inquiry to compensate the owner of the fee for an appropriation of his lands to the use of the District. The owner of the land is bound by his agreement with the purchaser of the timber to permit the latter to cut the timber and to allow him the privilege of ingress and egress for the purpose of cutting and removing it. If the owner by his own act or by operation of law becomes unable to carry out his agreement or causes his lessee damages because of the destruction of timber and the impairment of his privileges of ingress and egress the owner of the land becomes liable to his grantee of the timber.

In this view of the case we are of the opinion that the order sustaining the demurrer is correct and should be affirmed.

Affirmed.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL, DAVIS, J.J., concur in the opinion and judgment.