# Wytheville.

## STUART v. PENNIS.

### JULY 18, 1895.

1. CHANCERY JURISDICTION—*Specific Performance—Growing Trees.*—Growing
   trees constitute a part of the soil, and a contract in writing for the sale
   of them will be specifically enforced by a court of equity. But even if
   they were deemed personalty, a court of equity would entertain a bill
   for specific execution of a contract for their sale, because the remedy at
   law is inadequate and incomplete.

Appeal from a decree of the Circuit Court of Russell county,
pronounced March 11, 1895, in a suit in chancery wherein
the appellant was the complainant, and the appellee was the
defendant.

*Reversed.*

This was a bill in equity by Dale C. Stuart against S. P.
Pennis to enforce the specific execution of the following con-
tract:

"Bought of Mrs. S. P. Pennis all poplar timber between her
residence and Mrs. E. C. Carter's and between the Meade
road and Jesse's Mill road and running with the top of Cop-
per Ridge, and measuring 24 inches in diameter inside of the
bark and up, and as much as thirty-two feet of merchantable
timber at three dollars per tree, and all other poplar on her
place of same measurement and specifications at two dollars
per tree.

Also white oak, ash and cucumber trees on her entire place of same dimensions at one dollar and fifty cents per tree. All timber is to be free from knots and all other visible defects. Three years is the time allowed for removing the timber from land. One hundred dollars is to be paid January 1, 1893, and the remainder to be paid as the timber is taken away. The timber is to be inspected and marked as soon as practicable.

D. C. STUART.<br>
S. P. PENNIS."

December 24, 1892.

*W. E. Burns* and *J. J. Stuart*, for the appellant.

*H. A. Routh, J. C. Gent* and *W. W. Bird*, for the appellee.

RIELY, J., delivered the opinion of the court.

This is a suit in equity to compel the specific performance of a contract in writing for the sale of growing timber trees. Upon a demurrer to the bill, it was dismissed by the court.

There was and could be no objection urged against the relief sought growing out of any indefiniteness as to the terms of the contract, or as to its subject matter. The defence of the appellee was that the subject of the contract was personal property, and not an interest in real estate; and being personal property, and there also being an adequate remedy at law for the breach of the contract, a court of equity would not specifically enforce it.

On the other hand, counsel for the appellant claimed that standing trees so pertain to the soil that a contract for their sale is in law a sale of an interest in land; and that as under the general rule, a court of equity will always enforce, in a proper case, the specific performance of a contract for the sale of land (2 Minor's Inst. 867; and Pomeroy on Specific

Performance of Contracts, sec. 10), such relief should have been granted in this case.

We have been cited by counsel to no decision of this court on this subject, and are ourselves aware of none. Our attention was called to the case of *McCoy* v. *Herbert*, 9 Leigh, 548, but an examination of it shows that the question in controversy here was not there raised or decided.

The sole question there was as to the validity of an assignment of a contract of sale of certain trees standing in the woods, which had been bought for ship timber, and not whether the subject of the contract was an interest in land, or chattels. There is scarcely any other subject upon which there is so great diversity of judicial decision. Whenever required to pronounce upon a contract for their sale, courts have seemed uncertain as to whether standing or growing trees should be classed as real or personal property. Not only have the courts of different jurisdictions decided differently, but the decisions of the same court within the same jurisdiction have not always been uniform. Particularly has this been the case with the courts of England, and their latest declaration on this question (*Marshall* v. *Green*, 1 C. P. Div. 35), has not escaped criticism from very high authority. *Hirth* v. *Graham*, 50 Ohio St. 57 (40 Amer. St. Rep. 641); Benjamin on Sales, sec. 126, (ed. of 1892); and Article by Prof. Washburn, the learned author of the work on Real Property, published in the Albany Law Journal, and to be found in the note to the case of *Purner* v. *Piercy*, 17 Amer. Rep. 595.

The decisions of the highest courts in the several States of the Union have also been greatly at variance with respect to this subject. It will be found, however, upon an examination of them, that the weight of authority preponderates in favor of the view that a contract for the sale of growing trees is a contract for the sale of an interest in land, and is to be so

treated. *Hirth* v. *Graham, supra, Owens* v. *Lewis,* 46 Ind.
488 (15 Amer. Rep. 295); *Green* v. *Armstrong,* 1 Denio (N.
Y.) 550; *Slocum* v. *Seymour,* 36 N. J. Law 138, (13 Am.
Rep. 432); *Kingsley* v. *Holbrook,* 45 N. H. 313, (86 Am.
Dec. 173); *Buck* v. *Pickwell,* 27 Vt. 157; *Harrell* v. *Miller,*
35 Miss. 700; Bishop on Contracts, sec. 1294; and Washburn
on Real Property, 366-67.

Land includes everything belonging or attached to it, above
and below the surface. It includes the minerals buried in
its depths, or which crop out of its surface. It equally includes
the woods and trees growing upon it. Rooted and standing
in the soil, and drawing their support from it, they are regarded
as an integral part of the land just as are the coal, the iron,
the gypsum, and the building stone which enter so largely
into the business of commerce. Attached to the soil, they
pass with the land as a part of it. A conveyance of the land
carries with it to the grantee the right to the forests and
trees growing upon it. In the dealings of men, growing
timber is ever regarded as a part of the realty. Upon the
death of the ancestor they pass with it to his devisee, or
descend with it to his heir, and not to his executor or admin-
istrator. They are not treated as personalty. They are not
subject to levy and sale under execution. And so, upon prin-
ciple, sound reason, and authority, we are of opinion that they
constitute an interest in, or are a part of, the land, and must
be so treated by the courts.

We are the better satisfied with the conclusion reached, in
that it has the merit, of being easily understood and readily
applied, not only to this particular industry, but to the many
other useful, varied, and boundless natural products of a
similar kind of the section of the State whence this case
comes, in whose development its people are becoming more
largely engaged year by year. But if the contract was not to
be treated as a sale of an interest in land, of which it is as much

a matter of course for a court of equity to decree a specific performance as it is for a court of law to give damages for the breach of it, we are, nevertheless, of the opinion that it would be a proper case for the enforcement of the contract. While the doctrine is well established that a court of equity will not, in general, decree the specific performance of contracts relating to chattels, yet it will do so where the remedy at law is inadequate to meet all the requirements of a given case, and to do complete justice between the parties.

The true equity rule is thus laid down in Story's Equity J., sec. 33: "The remedy must be plain; for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate; for if at law it fall short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief and secure the whole right of the party in a perfect manner, at the present time, and in future; otherwise, equity will interfere and give such relief and aid as the exigency of the particular case may require."

The remedy at law would fall short in the case at bar of measuring up to this rule. The vendee had the right, if he chose to exercise it, to let the trees remain standing upon the land for a period of three years. Where the fulfillment or execution of a contract may extend through several years, it would be difficult to estimate the damages. His profits, depending in such case on future events, could not be estimated in present damages without being largely conjectural. As is said by Pomeroy in his book on Contracts, sec. 15: "To compel a party to accept damages under such circumstances is to compel him to sell his possible profits at a price depending on a mere guess."

Then again, the trees included within the body of land described in the contract and bought by the appellant have

not been marked or counted; and he has been forbidden by the appellee to mark or disturb them. He has no way of ascertaining their number but by going on the land and marking and counting them. After being forbidden to do this, he is without the means of ascertaining the number of the different kinds of trees purchased; and without knowing their number, it is not possible to ascertain his damages. The remedy at law in this case would clearly be neither adequate nor complete.

For the foregoing reasons, we are of opinion that the court erred in sustaining the demurrer to the bill, and the decree complained of must be reversed.

REVERSED.