# Staunton.

HURLEY v. HURLEY.

September 9, 1909.

1. STANDING TREES—*When Considered Real Estate—Statute of Frauds.*
   Independently of statute, a contract for the sale of growing
   trees, which are to remain upon the land for a time for the
   purpose of further growth and profit, is a contract for the sale
   of an interest in land, and must be proved by a writing. But if
   the trees are to be severed immediately, or within a reasonable or
   convenient time, with a mere license to enter and take them
   away, without any stipulation for the beneficial use meanwhile
   of the soil, it is a sale of goods, and need not be in writing.

2. STANDING TREES—*Branding—Effect of Statute on Title—Statute of
   Frauds.*—The effect of the "Act to protect the owners of timber
   and logs from depredation" (Acts 1893-4, p. 513, Code (1904) sec.
   1906-c) is to take a contract for the sale of standing timber
   which has been branded in accordance with the provisions of
   the act out of the operation of the statute of frauds, and to
   invest the purchaser with the absolute title thereto. The
   branding is made equivalent to a conveyance and delivery of the
   possession by the vendor to the vendee. The act, moreover, ex-
   pressly includes trees branded before as well as those branded
   after its passage.

3. CONSTITUTIONAL LAW—*Titles of Acts—Sufficiency—Standing Trees.*
   The object of the act mentioned in paragraph 2 above is suffi-
   ciently expressed in its title. The settled rule with reference to
   sufficience of titles to statutes generally is that the constitutional
   provision shall be liberally construed so as to uphold the statute
   if practicable. All that is required is that the subjects em-
   braced in the statute but not specified in its title shall be con-
   gruous and have natural connection with, or be germane to,
   the subject expressed in the title.

4. STATUTE OF FRAUDS—*Parol Contract for Sale of Land—Code, Sec.
   2840.*—Section 2840, clause 6, of the Code renders parol contracts
   for the sale of real estate *voidable only* and not *void*.

5. STATUTES—*Curative Acts—Validity.*—The legislature has power to
   enact a law validating an agreement which was unenforcable

when made.   The test of the validity of curative acts which operate retrospectively is the authority of the legislature originally to have conferred the power or authorized the act.

Error to a judgment of the Circuit Court of Buchanan county in an action of trover, brought by the vendee of standing trees against his vendor, who had cut and removed them.   Judgment for the defendant.   Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*W. A. Daugherty* and *S. M. B. Coulling,* for the plaintiff in error.

*J. F. Griffith* and *A. A. Skeen,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action of trover, brought by the plaintiff in error, Eli Hurley, to recover of the defendant in error, James H. Hurley, damages for cutting down and converting to his own use certain standing trees alleged to be the property of the plaintiff in error.

Upon the trial the plaintiff offered to prove that in the year 1892 he purchased from the defendant by *parol contract* the trees in the declaration mentioned, paying the purchase price in full, and impressed or marked the trees which at the time were standing and growing upon the land of the defendant with his (the plaintiff's) brand or trademark.   The plaintiff also offered to prove that on December 31, 1904, his brand or trademark was admitted to record in the clerk's office of the Circuit Court of Buchanan county, in accordance with the provisions of the statute.

Whereupon the defendant objected to the admission of the evidence, and the court sustained the objection, being of opinion that the facts proved were insufficient to show ownership of

the trees in the plaintiff. The plaintiff adducing no further evidence of title, the jury returned a verdict for the defendant, upon which the court entered the judgment now under review.

Before discussing the bearing of the statute or the rights of the parties, it may not be inappropriate to review briefly the general doctrine in this jurisdiction touching contracts with respect to standing timber.

In *McCoy* v. *Herbert,* 9 Leigh 548, it was held that the assignee of a *written contract of sale* of standing trees to be chosen by the vendee, having selected and marked the trees, could maintain trover against the vendor for felling and converting them to his own use.

In *Stuart* v. *Pennis,* 91 Va. 688, 22 S. E. 509, there was a written contract for the sale of trees standing on a boundary of land described in the agreement. The vendee had the right, if he chose to exercise it, to let the trees remain standing upon the land for a period of three years. It was there held by a unanimous court that this was a sale of an *interest in land,* and the contract would be specifically enforced by a court of equity. Several years later the case was again appealed, when the court, only four judges sitting, was equally divided as to the right of the appellant to have a decree for a specific performance of the contract, and consequently no opinion was prepared; but the judges were all agreed that the decree of the circuit court dismissing the bill should have been without prejudice to the right of the appellant to institute an action at law to recover damages for a breach of the contract, and amended the decree accordingly. *Stuart* v. *Pennis,* 33 S. E. 1015. It seems that two of the four judges who participated in the consideration of the case at the second hearing were of opinion that the contract ought not to be specifically enforced *because of equities de hors the contract* which had developed since the first appeal. But there was no disposition on the part of the court to recede from the general statement of the law announced at the former hearing. 6 Va. L. Reg. 50.

Professor Raleigh C. Minor, in his admirable work on Real Property (1 Min. on Real Prop., sec. 42), observes: "After the trees, grass or other *fructus naturales* are severed from the land they at once lose their character. as part of the land, and become personal property. · The severance may be *actual,* as by cutting down timber, or it may be *constructive,* the trees, etc., actually continuing to grow upon the soil as before. In either case, immediately after the severance the *fructus naturales* become *personalty,* though in case of a constructive severance the owner of the *fructus naturales* has an interest in the soil itself in the nature of an easement sufficient for their support·and nourishment, with the right to enter upon the land to remove them. Such constructive severance occurs when the owner of the land *sells* trees growing thereon·or even when he mortgages them (after the maturity of the mortgage) ; it also occurs when he sells the land, *excepting* the trees growing thereon. While, as just shown, a sale of the growing trees, etc., converts them at once into *personalty,* it is quite another thing to say that such sale is itself a *sale of personalty.*" He then discusses the importance of the point with reference to the operation of the statute of frauds, and concludes that the weight of authority seems to be in favor of the view that a sale of trees growing upon land "is *prima facie* at least a sale of an *interest in land,* and therefore comes within the statute, unless ·under the agreement the title is not to pass until the products have been severed, in which case the contract is for the sale of chattels."

In further discussion of the subject as affected by the statute of frauds, the learned author, at section 1286, says: "What is the precise nature of the *land* or *interest in land* contemplated by the statute, a contract for which must be in writing, is a vexed question. The doctrine generally recognized seems to be that in contracts for the sale of things growing upon the land (*fructus naturales*), if the vendee is to have *a right to the soil* for a time, for the purpose of further growth and profit of what is sold, it is an *interest in the land,* and must be proved in writ-

ing. But when the thing is sold in prospect of a separation from the soil immediately, or within a reasonable or convenient time, without any stipulation for the beneficial use meanwhile of the soil, but with a mere license to enter and take it away, it is to be regarded as a sale of goods only, and so not within the statute; and that not withstanding the thing be at present attached to the soil, and although an incidental benefit may be derived to the vendee from the circumstance that the thing may remain for a time upon the land."

Independently of statute (Acts 1893-1894, p. 513; Va. Code, 1904, Sec. 1906-c.) the foregoing is a correct statement of the general rule with respect to contracts for the sale of standing trees, and is well supported by authority.

The precise terms of the contract in the instant case do not sufficiently appear to enable us to say whether the case does or does not come within the influence of the general rule. The qustion for our determination, therefore, involves the sufficiency of the facts sought to be proved by the plaintiff in the trial court to invest him with title to the trees in controversy under the provisions of the statute.

Subsection 2 of section 1906-c, Va. Code, 1904, after providing the mode of adopting and recording the brand or trademark of timber dealers, declares that "Nothing in this act shall be construed to prevent any person who has heretofore used any particular brand from adopting the same as his trademark, and when he shall have adopted the same as his trademark, as provided in this act, it shall apply to the trees and timber heretofore marked with such brand as well as to such as may be hereafter so marked."

Subsection 6 provides: "That the placing or impressing of such brand or trademark on a log, tree or other marketable timber shall be deemed and held to be a change of ownership and possession."

The act moreover makes it a felony for any person to "cut down a tree or knowingly to have in his possession a log or other

timber that has been so branded without the written consent of its owner and claiming it as his own, or who shall convert it to his own use or offer to sell the same."

It will be observed that the act, in terms, applies to standing trees, and makes the branding of them equivalent to a conveyance and delivery of the possession by the vendor to the vendee. In other words, the legal effect of the act is to take a parol contract for standing timber which has been branded out of the operation of the statute of frauds, and to invest the timber dealer with the absolute title thereto; and the act expressly includes trees branded before as well as those branded after its passage, where the timber dealer has subsequently recorded his brand or trademark in accordance with the provisions of the statute.

It is contended, however, by the defendant in error, that to give the act that construction would render it unconstitutional for two reasons: (1) Because it would violate Art. 4, Sec. 52 of the Constitution of Virginia, which declares that "No law shall embrace more than one object, which shall be expressed in its title"; and (2) because the retrospective feature of the act would violate that part of section 58 which forbids the General Assembly to pass "any law impairing the obligation of contracts."

The title of the act is in these words: "An act to protect the owners of timber and logs from depredation."

With respect to the sufficiency of the title of statutes generally, the settled rule is that the provision is to be liberally construed, so that, if practicable, the law may be upheld. *Ellinger* v. *Commonwealth,* 102 Va. 100, 45 S. E. 807. Besides, all that is required by the Constitution is "that the subjects embraced in the statute but not specified in the title shall be congruous and have natural connection with or be germane to the subject expressed in the title." *Prison Asso. of Va.* v. *Ashby,* 93 Va. 667, 25 S. E. 893; *Bosang* v. *Building Asso.,* 96 Va. 122, 30 S. E. 440.

In considering the second contention, it must be remembered that section 2840, subsection 6 (statute of parol agreements),

does not make void parol contracts for the sale of real estate, but simply provides that no action shall be brought on them. *Burruss* v. *Hines,* 94 Va. 413, 25 S. E. 875.

The test of the validity of curative acts which operate retrospectively is the authority of the legislature originally to have conferred the power or authorized the act.    8 Cyc. 1023.

In 8 Cyc. 997-8, it is said: "It is remarkable that courts have been called upon to affirm the obvious truth that a law in force at a time when a contract is made cannot impair the obligation of that contract.    Only less remarkable is the frequent necessity for deciding that a law is valid which gives binding force to a voluntary agreement void or unenforceable when made.  An act validating usurious loans, or an act perfecting defective conveyances, may be mentioned as examples of this class of legislation."

"Statutes which validate contracts otherwise invalid are sustained when they go no further than to bind a party by a contract which he has entered into, but which was invalid by reason of some personal inability on his part to make it, or through neglect of some legal formality, or in consequence of some ingredient in the contract forbidden by law." Cooley Const. Lim. (6th ed.) 460; *Pace* v. *Danville,* 25 Gratt. 11; *Smoot* v. *Building Asso.,* 95 Va. 682, 29 S. E. 746, 41 L. R. A. 589.

We are of opinion that the grounds of objection urged against the constitutionality of the act in question are without merit and cannot be sustained.

It follows from what has been said that the circuit court erred in excluding the evidence offered by the plaintiff in support of his title, for which error the judgment must be reversed, the verdict of the jury set aside, and the case remanded for a new trial conformable to this opinion.

*Reversed.*