# 𝔖taunton

GOODLOE STRALEY V. JOSEPH C. FISHER.

September 5, 1940.

Record No. 2182.

Present, All the Justices.

The opinion states the case.

*W. B. Snidow,* for the plaintiff in error.

*J. L. Dillow,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

In February, 1938, Goodloe Straley, the defendant in the lower court, entered into a verbal contract with Joseph C. Fisher, whereby Straley sold to Fisher all of the standing pine, oak, chestnut and maple timber and mine props on a twenty-five acre tract in Mercer county, West Virginia. Under the contract, Straley was to receive $5 per M log measure for pine, $3 per M for the other varieties of timber and 1c per lineal foot for mine props. Payment was to be made by Fisher for the logs as they were measured at a sawmill approximately three miles from the tract, and for the mine props as they were marketed at the mines some distance away.

In June, 1938, Fisher had cut and removed all of the pine, and had cut, but had not removed or marketed 40,000 feet of logs of the other varieties and 2,000 to 2,500 mine props. The timber products removed were paid for according to the contract. About 10,000 feet of standing timber which Fisher claimed was sold under the contract had not been cut.

Fisher testified that on account of the poor market for timber during the summer of 1938 he neither cut the remaining standing timber nor sold the timber and mine props already cut, with the exception of a small quantity he had disposed of in October of that year.

Straley testified that he needed money and urged Fisher, in June and thereafter, to remove the cut timber and sell it; and that in December, 1938, not having received any satisfaction from Fisher, he sold all that remained on the tract, both cut and standing, to a third person for the sum of $55.

Fisher denied that Straley had urged that the timber be removed. He stated that the first he knew of the sale of the timber to another and its removal from the tract was when he went on the land in January, 1939.

There is but little conflict in the evidence on material points. Straley admitted the terms of the contract as stated by Fisher and undertook to justify the second sale by setting forth the failure of Fisher to promptly remove and pay for all of the timber sold. The purchaser at the second sale

testified that the $55 he paid Straley was about all that the timber was worth; that there was only about 35,000 feet of timber, both standing and cut, left by Fisher; and that it was of inferior quality and sold at a mill at from $8 to $12 per M, only a small portion bringing the latter price.

Over the objection of the defendant, Fisher was permitted to testify that he "could have made a profit" of $5 per thousand feet on the timber, standing and cut, and 2c per lineal foot on the mine props, the defendant contending that the measure of damages, if any, for the conversion was the market value of the timber at the time and at the place where the conversion took place. Over the further objection of the defendant, Fisher testified that in preparation for carrying out his contract, he had gone upon the land of Straley and built roads for the passage of motor trucks to haul out the timber.

After the second sale by Straley, Fisher entered suit against Straley upon a warrant for $690, issued by the trial justice court of Giles county, and recovered a judgment for $431.14. The warrant alleged the $690 "to be due by damages for wrongful removal of certain timber."

Upon appeal to the circuit court, Straley demanded a bill of particulars disclosing the form of action which Fisher intended to pursue. A bill of particulars was filed, stating that damages were being demanded "for the wrongful removal of certain logs," which the defendant had sold to the plaintiff and thereafter wrongfully sold to another. The bill of particulars averred the conversion by Straley of 2,500 mine props, 40,000 feet of logs, and 10,000 feet of "logs not then cut" (standing timber) belonging to Fisher.

The defendant filed a plea of not guilty and a cross-claim against the plaintiff for rent of a certain farm. The case was then tried as an action of trover and conversion. The jury, after allowing the amount of the cross-claim of the defendant, found a verdict for the plaintiff in the sum of $531.14, upon which judgment was entered by the trial court.

The circuit court, over the objection of the defendant, instructed the jury on the measure of damages as follows:

"The court instructs the jury that if they shall believe from a preponderance of the evidence in this case, that the defendant Goodloe Straley contracted to sell the timber in question to the plaintiff Joseph C. Fisher, and that thereafter, the said Goodloe Straley sold the said timber, logs and mine props to another person, resulting in the removal of the same, then you will find in favor of the plaintiff Joseph C. Fisher the difference between the market value of such timber, logs and mine props which the evidence may show to have been so sold and removed, and the cost to said Joseph C. Fisher of placing the same on the market."

The grounds of the objection were that the instruction stated the wrong measure of damages as to the timber, both cut and uncut, and that it was misleading. The objection to this instruction, we think, was well taken and should have been sustained.

In trover, when the conversion is complete, the measure of damages, as a general rule, is the value of the property converted at the time and the place of conversion.

If there is no market at such time and place, it may be ascertained by considering its then value at the nearest and most available place at which there is a market, less any necessary cost of transportation thereto. While there are exceptions to this general rule, the exceptions usually apply where such measure does not accord with the principle of just compensation for the loss sustained. In actions of trover, profits dependent upon conjectural, speculative or estimated future bargains are not subject to recovery. Burks' Pleading and Practice (3d Ed.) page 260; 65 Corpus Juris, Trover and Conversion, sections 247, 249 and 251; *McCormick* v. *Hamilton*, 23 Gratt. (64 Va.) 561.

Hence, in this case, the loss, if any, suffered by Fisher was the difference between the market value of the timber at the time and place of conversion and the amount which Fisher agreed to pay Straley therefor.

There was no evidence in the case to show the value of the logs and props at the place and at the time when they were alleged to have been converted. Fisher testified that he had not sold them because of the unsatisfactory condition of the market, but he did not undertake to state the market value of the property at any given time or place. There was no evidence that Fisher had placed the timber products on the market, and his statement that "he could have made a profit of five dollars per thousand" on the timber is purely an estimation or approximation of possible future profits.

The instruction is misleading, in that it does not clearly set out the items to be included in "the cost to the said Joseph C. Fisher of placing the same (timber) on the market." It leaves out of consideration the amount due Straley for the logs and the props. The entire cost of the timber and its marketing, of course, included more than labor and transportation; it included the original sale price of the timber to Fisher.

■ The defendant also assigns as error the refusal of the trial court to instruct the jury that Fisher could not be allowed anything for the timber not cut from the soil by the plaintiff. The objection to the refusal to give this instruction is without merit.

■ In Virginia, growing trees constitute a part of the soil and are regarded as real estate; but when growing trees are sold under a contract providing for their separation from the soil immediately, or within a reasonable and convenient time, the contract converts them into personal property. Thus, in *Hurley* v. *Hurley*, 110 Va. 31, 65 S. E. 472, 18 Ann. Cas. 968; and *Hurricane Lumber Co.* v. *Lowe,* 110 Va. 380, 66 S. E. 66, this court followed that principle and approved the following doctrine stated by Professor Raleigh C. Minor, in his very excellent work on Real Property (2d Ed.), section 1192, wherein it is said:

"The doctrine generally recognized seems to be, that in contracts for the sale of things growing upon the land (*fructus naturales*), if the vendee is to have *a right to the*

*soil* for a time, for the purpose of further growth and profit of what is sold, it is an *interest in the land,* and must be proved in writing. But where the thing is sold in prospect of a separation from the soil immediately, or within a reasonable or convenient time, without any stipulation for the beneficial use meanwhile of the soil, but with a mere license to enter and take it away, it is to be regarded as a sale of goods only, and so not within the statute; and that notwithstanding the thing be at present attached to the soil, and although an incidental benefit may be derived to the vendee from the circumstance that the thing may remain for a time upon the land."

The last assignment of error relates to the admission of evidence that Fisher built certain roads upon the lands of the defendant, in order to remove the timber purchased by him. In this particular action, such evidence was admissible only for the purpose of showing that the timber products were accessible to the market, the value of the timber being naturally affected by the ease with which it could be removed. The cost of building the roads was reflected in the net value of the timber. Fisher could not recover in this case for the cost of building the roads and also realize on the increase in the value of the timber products occasioned by the construction of good roads. Since there was no attempt to show the amount of the cost of building the roads, the mere admission of the fact that the timber was located on or near good roads was not erroneous.

For the reasons indicated, the judgment of the trial court is reversed, the verdict set aside, and this cause remanded for a new trial in accordance with the views expressed herein.

*Reversed.*