# Richmond

W. S. Hundley v. Jesse R. Hulber, Et Al.

June 13, 1960.

Record No. 5100.

Present, All the Justices.

The opinion states the case.

*Y. Melvin Hodges* (*Hodges & Harris*, on brief), for the appellant.

*Frank C. Bedinger, Jr.* (*F. C. Bedinger; Bedinger & Bedinger*, on brief), for the appellees.

Miller, J., delivered the opinion of the court.

On April 28, 1959, W. S. Hundley filed a bill of complaint against Anthony Hulber, Peter P. Hulber, Jesse R. Hulber, Louis Hulber, Jr., and others, in which he sought specific performance of an oral contract for the sale to him by the Hulbers of timber on land owned

by them. A demurrer interposed to the bill by the Hulbers and other defendants was sustained, and by decree of June 29, 1959, the bill was dismissed. We granted Hundley an appeal.

In his bill Hundley alleged that the four Hulbers were co-owners of two described tracts of land, totaling about 401 acres, in Mecklenburg county, Virginia; that on April 9, 1959, after conferring with three of the owners, he made a firm offer of $64,000 cash to buy all the standing timber on the land "measuring 7 inches across the stump at a level 7 inches above the ground, excepting hickory and cedar trees, with milling rights on said premises to December 31, 1962"; that three of the owners, *i.e.*, Anthony, Peter and Jesse Hulber, told him that they would accept the offer, but to conclude the sale they had to obtain the agreement of Louis Hulber, Jr., who was in New York, N. Y., "which they agreed to do promptly, and which they did, in accordance with their agreement." It is then alleged that on April 12, 1959, Anthony and Jesse Hulber exhibited to him a letter from Louis Hulber, Jr., accepting the offer and authorizing them to accept the $64,000, which Hundley had agreed to pay on a specified day that week, and that thereby "complainant's purchase was made fast," the sale became complete, the timber converted into personal property, and Hundley became the legal owner of the timber, with the right to enter, cut and remove the timber at any time prior to December 31, 1962. It is also alleged that Anthony Hulber then stated that they would have a writing prepared for execution to evidence their sale of the timber, and on April 12, 1959, they directed their attorney to prepare the writing which was drawn and dated April 14, 1959. An unsigned copy of this writing or timber deed is attached to the bill.

It is then charged that Albert Butler, J. T. Butler, and other named individuals, acting for themselves or as agents for designated principals, approached James R. Hulber and Peter P. Hulber with the view of purchasing the standing timber, which they knew had been previously sold to complainant, and thereafter J. T. Butler, acting for the Butler interests, flew to New York, offered Louis Hulber, Jr., $68,500 for the timber, and then obtained execution of a writing from the four Hulbers purporting to convey the standing timber to him, "well knowing that it was then owned by complainant."

It is finally alleged that if the Butlers, the subsequent purchasers, individual or corporate, are allowed to enter the premises, cut and remove the timber, complainant will be unable to get any adequate

record of the quantity or quality of timber cut and removed or determine the damages inflicted upon him; that the Butlers cut timber into odd sizes and shapes to manufacture boxes and crates, and thereby render the timber and lumber unsusceptible of standard estimations. Thus complainant claims that he has no adequate remedy at law and will suffer irreparable injury unless defendants be restrained from cutting and removing the timber. In addition to the four Hulbers, all interested corporations and persons, including Albert Butler and J. T. Butler are made parties defendant, and it is prayed that an injunction issue, that the conveyance of the timber to J. T. Butler, individually or as agent, be voided and complainant be granted specific performance of his contract to purchase the timber.

The chief ground of demurrer is that Hundley's oral contract is unenforceable because it relates to an interest in land and fails to meet the requirements of § 11-2, Code 1950, commonly called the Statute of Frauds. The material parts of that section read as follows:

"No action shall be brought in any of the following cases:

  *   *   *   *   *   *   *

"(6) Upon any contract for the sale of real estate, or for the lease thereof for more than a year; * * *

  *   *   *   *   *   *   *

"Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent; but the consideration need not be set forth or expressed in writing, and it may be proved (where a consideration is necessary) by other evidence."

The dominant question presented is whether or not the sale of the timber on April 12, 1959, designated as to size and character upon specified tracts of land with the usual milling rights and privileges to cut and remove the timber at the convenience of the purchaser at any time prior to December 31, 1962, constitutes a sale of real estate within the meaning of § 11-2, Code 1950.

Complainant, Hundley, contends that the sale of the timber under the alleged facts and circumstances converted it into personal property, and the prohibition in § 11-2 that "No action shall be brought" upon a contract for the sale of real estate unless the contract, agreement, or some memorandum thereof be in writing and signed by the

party to be charged, is inapplicable and does not preclude complainant from obtaining the relief sought. Among the authorities he relies upon are 2 Minor, *Real Property*, 2d ed., § 1192, page 1590, and *Straley* v. *Fisher*, 176 Va. 163, 10 S. E. 2d 551.

In § 1192, page 1590, of Professor Raleigh C. Minor's admirable work it is said:

"What is the precise nature of the *land* or *interest in land*, contemplated by the statute, a contract for which must be in writing, is a vexed question. The doctrine generally recognized seems to be, that in contracts for the sale of things growing upon the land (*fructus naturales*), if the vendee is to have *a right to the soil* for a time, it is an *interest in the land*, and must be proved in writing. But where the thing is sold in prospect of a separation from the soil immediately, or within a reasonable or convenient time, without any stipulation for the beneficial use meanwhile of the soil, but with a mere license to enter and take it away, it is to be regarded as a sale of goods only, and so not within the statute; and that notwithstanding the thing be at present attached to the soil, and although an incidental benefit may be derived to the vendee from the circumstance that the thing may remain for a time upon the land."

In footnote 8 following this section, the learned author cites, among other authorities, *M'Coy* v. *Herbert*, 9 Leigh (36 Va.) 548; *Hurley* v. *Hurley*, 110 Va. 31, 65 S. E. 472, and *Hurricane Lumber Co.* v. *Lowe*, 110 Va. 380, 66 S. E. 66, also relied upon by complainant. However, the facts and circumstances in those cases are materially different from those set out in the bill before us.

The action in the *M'Coy* case was by an assignee of the purchaser against the original seller to recover damages for the wrongful conversion by the seller of trees that he had sold under written contract. Though the trees were held to be personal property, yet they had been paid for by the purchaser and selected and marked by his assignee before the landowner cut and converted them to his own use.

In the *Hurley* case though the contract of sale was parol, yet the trees were held to have been converted into personal property because the purchaser had paid the purchase price in full and marked the standing trees with his brand or trade mark, which, under the provisions of Acts 1893-94, ch. 464, p. 513, effected a change of ownership and possession of the trees so marked.

In the *Hurricane Lumber Co.* case, plaintiff, Lowe, sued Hurricane and George J. Walker for the value of certain trees that they had

purchased on oral contract, cut down, removed and marketed, and Lowe obtained a verdict and judgment. Upon appeal Judge Keith, in delivering the opinion of this court, said:

"There was evidence tending to prove all the averments of the plaintiff's declaration—that he had by verbal contract sold to Walker, acting for himself and the Hurricane Lumber Company, trees of the value ascertained by the verdict, all of which the defendants had cut, carried away, marketed and appropriated the proceeds to their own use, and upon demand being made therefor had refused to pay the price, * * *"

"It appears, then, that the evidence tends to prove a parol contract, executed in all its parts, except the payment of the purchase price of the subject of the sale.

\* \* \* \* \* \* \*

"While the timber in this case was selected, marked and the value of each tree computed by Lowe and the agent of the purchaser, it does not appear that any brand or trade-mark with respect to the trees was recorded, or indeed that any such brand or trade-mark as is contemplated by the statute had been adopted by Lowe.

"The contract in this case contemplated the immediate severance of the trees from the land * * *. (At pages 382, 383)

\* \* \* \* \* \* \*

"The trees were in the possession of defendant in error [Lowe]; the verbal contract with respect to them ascertained the trees that were sold and their value; and acting under and by virtue of this contract the plaintiffs in error [Walker and Hurricane] entered upon the land, cut down, carried away and sold those trees. For reasons already given we are of opinion that under the circumstances disclosed by this record the contract, being for the sale of the trees and their immediate removal, was for the sale of goods only, and not of an interest in real estate, and so not within the statute of frauds." (At page 386)

It should also be observed that Professor Minor, in discussing this subject in § 1191, at page 1590, makes the following observation:

"* * * The Virginia court has been very stringent in adherence to the Statute and will enforce a contract which is not in writing only in exceptional cases. * * *"

Also in 1 Minor, *Real Property*, 2d ed., § 42, the conflict in authorities on this subject is recognized and this statement is made by the author:

"The weight of authority is in favor of the view that a sale of grass or trees growing upon land, or of fruit growing upon such trees is a sale of an *interest in land*, and therefore comes within the statute, unless under the agreement the *title is not to pass* until the products have been severed, in which case the contract is for sale of chattels."

Here the bill does not indicate that title to the timber was not to pass until the trees were severed and the fact that a written contract was contemplated and actually drawn suggests strongly that it was not the intent of the parties that passage of title be dependent upon or consummated by severance of the trees which might be delayed by complainant under the terms of the contract for more than three years.

In *Straley* v. *Fisher, supra,* Straley sold to Fisher by oral contract February, 1938, the standing pine, oak, chestnut and maple timber and mine props on twenty-five acres of land. He was to receive $5.00 per M log measure for pine, $3.00 per M for other varieties, and 1¢ per lineal foot for props. Payment for the logs was to be made upon measurement at the sawmill and for the props as marketed at the mines. During the first four or five months Fisher cut and removed all the pine, 27,000 feet, for which he paid. He also cut and had on the ground about 40,000 feet of other varieties in logs and 2,000 to 2,500 mine props; about 10,000 feet of timber was still standing. Because of a poor market during the summer he delayed cutting the balance of the timber or moving the 40,000 feet of logs and props, except for a few that he sold in October. During December, 1938, Straley sold the 40,000 feet of logs, the cut props and the remaining 10,000 feet of standing timber. Upon learning that Straley had sold the logs, props, and standing timber to another person who had removed them from the premises, Fisher instituted an action for conversion against Straley and obtained a judgment for damages. Upon appeal to this court, Justice Spratley, in commenting upon Straley's assignment of error to the effect that Fisher should be allowed nothing for the timber not cut from the soil by him, held the assignment to be without merit and said:

"In Virginia, growing trees constitute a part of the soil and are regarded as real estate; but when growing trees are sold under a

contract providing for their separation from the soil immediately, or within a reasonable and convenient time, the contract converts them into personal property. * * *" (At page 168)

Among the decisions relied upon by the Hulbers is *Stuart* v. *Pennis*, 91 Va. 688, 22 S. E. 509. There suit for specific performance was instituted by Stuart against Pennis upon a written contract dated December 24, 1892, under which Stuart had bought from Pennis standing timber at a stipulated price per tree. After describing the kinds and sizes of the trees, the contract provided that three years was allowed for removing the timber, which was to be inspected and marked as soon as practicable; one hundred dollars was to be paid January 1, 1893, and the remainder as the timber was taken away. A demurrer was interposed to the bill, and Pennis contended "that the subject of the contract was personal property, and not an interest in real estate," and thus there was an adequate remedy at law for breach of the contract. Stuart contended that standing trees constituted an interest in land and that equity will enforce specific performance of the sale of land in a proper case. The demurrer was, however, sustained, but upon appeal this court reversed the decree. Judge Riely, who delivered the unanimous opinion, after commenting upon the conflict of decisions upon the subject said, at pages 690 and 691:

"* * * [T]hat the weight of authority preponderates in favor of the view that a contract for the sale of growing trees is a contract for the sale of an interest in land, and is to be so treated. * * *

\* \* \* \* \* \* \*

"* * * A conveyance of the land carries with it to the grantee the right to the forests and trees growing upon it. In the dealings of men, growing timber is ever regarded as a part of the realty. Upon the death of the ancestor they pass with it to his devisee, or descend with it to his heir, and not to his executor or administrator. They are not treated as personalty. They are not subject to levy and sale under execution. And so, upon principle, sound reason, and authority, we are of opinion that they constitute an interest in, or a part of, the land, and must be so treated by the courts." [1]

---

[1] It appears from 1 Va. Sup. Ct. Rep. 450, 33 S. E. 1015, that upon retrial in the circuit court Stuart's bill of complaint was dismissed, and upon appeal this court was equally divided as to Stuart's right to a decree for specific performance. The decree dismissing the bill was modified and amended so as to be without prejudice to Stuart's right to bring an action at law upon the contract. Brief comments upon the apparent

The West Virginia statute, § 3523, found in Vol. 2 W. Va. Code of 1955, is similar to the pertinent provision of § 11-2, Code 1950, and of persuasive effect is the case of *Gibson* v. *Stalnaker*, 87 W. Va. 710, 106 S. E. 243, in which the West Virginia statute was applied. There the court said at page 713:

"* * * Growing trees are part of the realty on which they stand, and a sale of them must be in writing * * *."

Of like import are *Fluharty* v. *Mills*, 49 W. Va. 446, 38 S. E. 521; 18 M. J., Trees and Timber, § 2; 8 M. J., Statute of Frauds, § 14.

It is to be observed that the writing sued on in the *Stuart* v. *Pennis* decisions where the court declared the sale of the trees to be a sale of land allowed the purchaser three years in which to cut and remove the timber whereas this parol contract allowed Hundley three years and eight months, and there is nothing in it to indicate that the trees were to be cut immediately or sooner than need be to move or market them within the period stated. No money had passed from Hundley to the sellers under the oral contract, and execution of a written contract was contemplated by the vendee and vendors. Though the executory verbal contract was not illegal or void, it was voidable, and it was revoked and voided by the sellers within a few days after it was allegedly made and before any timber was severed from the land or any part of the contract executed by vendee or vendors. Under the express provisions of the Statute of Frauds, it is unenforceable and specific performance may not be decreed.

*Affirmed.*

---

conflict in the two decisions of this court are found in 5 Va. Law Reg. 860 and 6 Va. Law Reg. 50. In the latter comment it is explained that on the second appeal two members of the court concluded that the contract was "not enforceable specifically, *because of equities dehors the contract,* disclosed by pleadings and proofs in the cause; and the court did not intend in any manner to recede from the general proposition established on the first appeal." Further explanation of why the court that determined on the first appeal that sale of the standing trees constituted the sale of an interest in land ultimately denied specific performance to the purchaser is found in *Hurley* v. *Hurley*, 110 Va. 31, at page 33. For final disposition of the litigation in the *Stuart-Pennis* case, see *Stuart* v. *Pennis*, 100 Va. 612, 42 S. E. 667.