BLANCHE MEADE SHANNON, ET AL.

V.

BETTY MEADE HALL

Record No. 850296

April 22, 1988

Present: All the Justices

*Jerry R. Tiller (Tiller & Tiller, P.C.,* on brief), for appellants.
*S. Strother Smith, III,* on brief), for appellee. Appellee submitting on brief.

THOMAS, J., delivered the opinion of the Court.

In this appeal from a decision in a partition suit, we must decide whether the trial court's disposition of the case comports with the requirements of Code § 8.01-83, and whether the ownership interests of the various parties in the property in question were properly calculated. Because we conclude that the trial court erred with regard to both issues, we will reverse its judgment.

Guy B. Meade and his wife Lena Blanche Meade owned, at the time of Guy's death on September 12, 1976, approximately 79.5* acres of land as tenants in common. Guy, who died intestate, was survived by his wife and their four daughters: Peggy Meade Lambert, Linda Meade Purcell, Alicia Meade Robinson, and Betty Meade Hall. Pursuant to the intestacy statute then in effect, Code § 64.1-1 (Repl. Vol. 1973), each of Guy's daughters received a one-fourth undivided interest in their father's one-half undivided fee simple interest in the property. However, the interests of the daughters were subject to their mother's statutory dower interest

---

* On brief, the parties refer to 81.5 acres of property. No basis for that figure appears in the record. The commissioner referred to a 52.5-acre tract which *included* a 2-acre trailer camp along with a 27-acre tract. Apparently, the parties have counted the 2-acre trailer park twice, first as part of the 52.5 acres, then separately.

of "one third of all the real estate," Code § 64.1-19 (1973) (amended in 1977).

On April 16, 1981, Betty Meade Hall filed a partition suit to secure her share of the property. In that suit, Hall named as defendants her mother, who had remarried and was known then as Blanche Meade Shannon, her stepfather Robert Shannon, and Hall's three sisters and their husbands.

After suit was filed, but before it came to trial, Mrs. Shannon and her four daughters made an effort to settle the matter. A meeting was held at a lawyer's office, but nothing came of that meeting. Later, a lawyer for Mrs. Shannon drafted a document which described itself as a Deed of Gift. In that deed, provision was made for the daughters to give a life estate in all their property to their mother, and for the mother to convey to her daughters a fee simple interest in the mother's portion of the property subject to a reserved life estate for the mother.

The deed did not recite that its effectiveness was conditioned upon all parties signing or that the grant from the mother was conditioned upon the grant from the daughters. Hall refused to sign the document. Hall's counsel wrote to the attorney who had circulated the draft deed that Hall was not interested in settlement and would pursue the partition suit. Despite Hall's refusal to sign, the deed, bearing the signatures of all parties except Hall, was recorded.

The cause was referred to a special commissioner who was directed to determine, among other things, the interests of the parties; whether the property could be divided in kind and, if so, how; and if the property could not be divided in kind, whether it should be sold at public auction. The commissioner conducted an *ore tenus* hearing and filed her report on December 6, 1983.

The commissioner determined that the property in question consisted of two tracts totalling approximately 79.5 acres. A 52.5-acre tract contained a farm and a 15-lot trailer court. A 27-acre tract contained a gas station, a welding shop, and a trailer lot.

The 52.5-acre tract was valued by excluding the trailer park, which was valued separately. The commissioner valued the farm at $85,900, the 2-acre trailer park at $31,500, and the 27-acre tract at $36,800. The total value placed on the property in question was $154,200. There is no dispute as to this figure.

The commissioner then determined that Mrs. Shannon's dower interest in the property, without regard to the August 25, 1981

deed of gift, was worth $25,525.24. Subtracting that amount from the total value assigned to the property left the property valued at $128,674.76. But, according to the commissioner, the deed of gift gave Mrs. Shannon a life estate in three fourths of the $128,674.76 figure, an amount which equaled $96,506.07. The commissioner calculated Mrs. Shannon's additional interest to be worth $47,924.91 which, when added to the $25,525.24 dower figure, established a total value of Mrs. Shannon's life interest of $73,450.15. By subtracting this latter figure from the $154,200 value assigned to all the property, the commissioner concluded that $80,749.85 worth of property remained free from Mrs. Shannon's interests.

The commissioner then determined that because Hall did not convey a life interest to her mother, Hall's "share was calculated by taking one-fourth of the $128,674.76. Her share is $32,168.69." The commissioner also concluded that the other sisters' shares were each worth $16,193.72. The total of three shares valued at $16,193.72 plus one share valued at $32,168.69 is $80,749.85.

The commissioner then made her recommendations. First, she pointed out that "all parties agreed that the property on which the trailer court was located could be set-off from the rest of the property, providing [that] a water easement was granted to the owner of the trailer lots from the owner of the farm." Next, she noted that the value of the trailer park, $31,500, was close to the value of Hall's interest in the property, $32,168.69. Therefore, she recommended that "the trailer park, plus $668.69 be set-off for Betty Hall as her share of the real property." The other parties filed exceptions to the commissioner's report.

A hearing on the exceptions was held before the trial court. The trial court overruled the exceptions and confirmed the commissioner's report. In the order overruling the exceptions, the trial court wrote as follows:

Betty Meade Hall is adjudged to be entitled to receive property or cash in the amount of THIRTY TWO THOUSAND ONE HUNDRED AND SIXTY EIGHT DOLLARS AND SIXTY NINE CENTS ($32,168.69) which represents her one-fourth share of the ONE HUNDRED TWENTY EIGHT THOUSAND SIX HUNDRED SEVENTY FOUR DOLLARS AND SEVENTY SIX CENTS ($128,674.76)

estate involved herein. The defendants may pay this amount to Betty Meade Hall directly, whereby all of her interest in the property would be relinquished, or they may sell some portion of the property equivalent in value to the THIRTY TWO THOUSAND ONE HUNDRED AND SIXTY EIGHT DOLLARS AND SIXTY NINE CENTS ($32,168.69) and give to Betty Meade Hall the proceeds of the sale. In either event, it is further ordered that upon the receipt of THIRTY TWO THOUSAND AND SIXTY EIGHT DOLLARS AND SIXTY NINE CENTS ($32,168.69) Betty Meade Hall would be denied any further interest in the Guy B. Meade estate.

The essence of this order is that Hall should be paid money of a predetermined amount for her interest in the property.

Partition of property *in kind* is an ancient legal precept known to English common law and existing independent of statute. *Leake* v. *Casati*, 234 Va. 646, 649, 363 S.E.2d 924, 926 (1988). However, partition by sale is a creature of statute and the statutory requirements must be substantially complied with before a sale can be conducted. *Id.*; *Sensabaugh* v. *Sensabaugh*, 232 Va. 250, 257, 349 S.E.2d 141, 145 (1986); *Cauthorn* v. *Cauthorn*, 196 Va. 614, 618-19, 85 S.E.2d 256, 259 (1955). Partition by sale cannot be ordered unless two statutory prerequisites are met: (1) that partition in kind *cannot* be conveniently made and (2) that a sale will promote the interest of those entitled to the property. *Sensabaugh*, 232 Va. at 256, 349 S.E.2d at 144; *See Smith* v. *Woodlawn Construction Co., Inc.*, 235 Va. 424, 368 S.E.2d 695 (1988) (this day decided). In this case, neither finding was made. Therefore, the trial court had no power to order any sale. We hold that the trial court erred in ordering the sale of a portion of the property in question and the payment to Hall of a specified sum of money.

On remand, the commissioner and the trial court must first determine whether this property can conveniently be partitioned in kind. If it can be, then that is what must be done. If not, then the trial court must determine whether sale will promote the interests of the parties. Only if the answer to the first question is in the negative and the answer to the second question is in the affirmative can a sale be ordered.

■ We next consider the question of the interests of the various parties in the property. Mrs. Shannon contends the trial court erred in calculating the interests of the parties. The trial court went through calculations and arrived at a monetary value for each of the interests in the property. But in our opinion, the trial court was bound to determine the percentage of ownership of the property in question without regard to its total estimated value.

The proper approach would have been as follows: When Guy died, his four daughters each took one-fourth of their father's one-half undivided interest in the realty, subject to their mother's dower interest. Thus, at Guy's death, but before the deed of gift, the ownership interests were as follows:

*Mrs. Shannon*: ½ undivided fee-simple interest in the 79.5 acres which she had owned, as a tenant in common, with her deceased husband
> Plus
> dower interest amounting to a life estate in ⅓ of the ½ undivided interest that passed to the four daughters by the intestacy statute.

*The Four Daughters*: ¼ of ½ undivided interest previously owned by their deceased father or, put another way, ⅛ undivided interest in the entire tract of land. The interest of the daughters was subject to their mother's dower interest.

Thus, at their father's death, the four sisters owned equal interests in the property.

The question is what effect the deed of gift had. There, the mother deeded to her daughters the ½ undivided interest she owned outright in the property. Each daughter thus gained a ¼ interest in their mother's ½ undivided interest. With regard to the property Mrs. Shannon conveyed to her daughters, she retained a life estate. With regard to the property already owned by her daughters, Mrs. Shannon was given a life estate by three of her four daughters in the portion of the property not already subject to her dower interest. Thus, after the August deed of gift the interests were as follows:

*Mrs. Shannon*: life estate in ½ undivided portion of · the property
> Plus

> life estate in ⅓ of the ½ undivided portion of the property
> Plus
> life estate in ¾ of ⅔ of the ½ undivided portion of the property
>
> *Betty Hall*: ⅛ undivided interest in the property subject to mother's dower interest of ⅓ of that ⅛
> Plus
> ⅛ undivided interest in the property fully subject to mother's life estate
>
> *The Other Daughters*: ⅛ undivided interest in the property fully subject to mother's life estate
> Plus
> ⅛ undivided interest in the property fully subject to mother's life estate, which together equals ¼ undivided interest fully subject to mother's life estate

By the approach suggested here, the interests of the parties can be determined without regard to whether the property is laid off in kind or sold and the proceeds divided. Here, the interests of the parties are stated in figures that form the basis for a percentage ownership determination as opposed to the sum certain approach which was incorrectly relied upon by the commissioner and the trial court. One major flaw with the approach used by the trial court is that when sold, the property might not bring the estimated price. It could bring more or less than predicted. But in either event, the party seeking partition would be entitled to his or her actual ownership interest in the property and not an amount set arbitrarily by the commissioner and the trial court. We hold, therefore, that the trial court erred in determining the interests of the parties.

Hall assigns cross-error to the trial court's failure to grant her a recovery for income generated by the property from the time of her father's death until the partition. The commissioner concluded that the property generated net income of $40,263.01 from 1976 through 1982 and that each daughter was entitled to a share of $6,710. However, no award of net income was made by the trial court. Given the existence of net income on the property to which Hall is entitled, at least in part, it was error for the trial court not to include such income in its judgment.

For all the foregoing reasons, the judgment of the trial court will be reversed and the case remanded for a new trial consistent with this opinion.

*Reversed and remanded.*

367-A

# VIRGINIA:

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Tuesday the 20th Day of September, 1988.

Blanche Meade Shannon, et al., Appellants,

against Record No. 850296
 Circuit Court No. C-10,608
Betty Meade Hall, Appellee.

Upon a Petition for Rehearing

On consideration of the petition of the appellants, a rehearing is granted of the judgment rendered herein April 22, 1988.

On further consideration whereof, the Court concludes that it could not properly consider the appellee's assignment of cross-error because such cross-error was not assigned in a brief in opposition. Accordingly, that portion of the Court's opinion, rendered April 22, 1988, which addresses the appellee's assignment of cross-error, is hereby deleted.

A Copy,

Test:

/s/ David B. Beach
Clerk