## CIRCUIT COURT OF KING GEORGE COUNTY

Dorothy Ray Maupin Brodie

v.

Nancy Joan Maupin Snider
and Grace Elaine Maupin Emert

June 22, 1993

Case No. (Chancery) 90–36

BY JUDGE JAMES W. HALEY, JR.

In this partition proceeding, the pinion issue is whether or not the parcel can be conveniently partitioned in kind. The principles here applicable concerning partition are well established.

> Equity has no inherent jurisdiction to order the sale of land for the purpose of partition. "*Prima Facie* each party is entitled to actual partition . . . ."

*Cauthorn v. Cauthorn*, 196 Va. 614, 619, 85 S.E.2d 256, 259 (1955).

> At common law courts of equity were empowered to partition land in kind; however, until the adoption of Code §§ 8.01–81 through 8.01–93 and their predecessors, courts did not possess jurisdiction to order the sale of land, *Leonard v. Boswell*, 197 Va. 713, 718, 90 S.E.2d 872, 875 (1956).

*Fitchett v. Fitchett*, 6 Va. App. 562, 564, 370 S.E.2d 318, 320 (1988).

> Partition by sale cannot be ordered unless two statutory prerequisites are met: (1) that partition in kind cannot be conveniently made and (2) that a sale will promote the interest of those entitled to the property.

*Shannon v. Hall*, 235 Va. 360, 368 S.E.2d 695, 698 (1988), petition for rehearing denied, 235 Va. 367-A, 372 S.E.2d 363 (1988). *See* Code

§ 8.01–83;[1] *Sensabaugh v. Sensabaugh*, 232 Va. 250, 256, 349 S.E.2d 141, 145 (1986); 68 C.J.S., *Partition*, § 21.

Those parties to a partition proceeding seeking sale of the entire property bear the burden of showing by the preponderance of the evidence that the property cannot "be conveniently divided in kind without a sacrifice of the interest of the owners." *Bridge v. Snead*, 151 Va. 383, 395, 145 S.E. 338, 341 (1928). Whether or not a parcel can or cannot be conveniently partitioned must be determined from "the distinctive facts of each case . . . ." *Bridge v. Snead, supra,* 151 Va. at 393, 145 S.E. at 342.

Accordingly, a detailed analysis of the evidence is required.

The equal co-parceners are Dorothy Ray Maupin Brodie, Nancy Joan Maupin Snider, and Grace Elaine Maupin Emert. The property involved is an unimproved, irregularily shaped parcel of 132.64 acres, the perimeter of which is approximately 9600 feet, with a total of approximately 1400 feet fronting on State Route 629, and on what is designated an "old road," on an April 26, 1991, survey attached to the pleadings. No other access is available. There are no roads on the property. No co-parcener owns adjacent property.

The court took a limited view of the property. The entire tract is in timber, but the timber, both as to type, value and age is unevenly distributed throughout the tract. An expert witness, Bobb, whose testimony is not challenged, established that the parcel cannot be divided into thirds with equal value of timber on each, that the timber on the entire parcel should be promptly clear-cut, and that the value of the timber is $212,000.00. If the parcel is clear-cut, the landowners would be required by statute to seed the property for re-forestation. In order to harvest the timber, a road has to be constructed on the property.

---

[1] § 8.01–83. *Allotment to one or more parties, or sale, in lieu of partition.* — When partition cannot be conveniently made, the entire subject may be allotted to any one or more of the parties who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to; or in any case in which partition cannot be conveniently made, if the interest of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court, notwithstanding any of those entitled may be a person under a disability, may order such sale, or an allotment of a part thereof to any one or more of the parties who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitled them to, and a sale of the residue, and make distribution of the proceeds of sale.

One expert soil scientist, Taylor, testified that he made 36 soil borings ("profiles") throughout the tract and found no sites which would allow such percolation as to permit the establishment of a drainfield. This expert's written report includes the following:

> Profiles were only placed in areas of the landscape that would be acceptable for use as a drainfield. Large areas of swales and wetlands were not profiled for this reason.
>
> The profiles indicated that the property is not acceptable for drainfield use due to a heavy clay loam subsoil that lies beneath most of the property. The clay loam percolates very slowly and causes a seasonally high water table 24–38 inches below the surface. The high water table was observed in several holes that were previously bored by someone else.

A second soil scientist, Elder, testified he found three "potential perc sites" as shown on a sketch marked Complainant's Ex. 1, filed with the depositions of February 2, 1993. (Locations 6, 16 and 25–26.) A review of this sketch shows one site on the parcel's eastern boundary, approximately 1,500 feet from State Route 629; the second centered within the parcel approximately 900 feet from the road, and the third near the western boundary approximately 400 feet from the road. Construction of access to each site obviously varies with the distance from State Route 629. Elder's written report also states:

> *Geology and General Nature*: This area is located in the Coastal Plain Physiographic Province. The area ranges from about 35 to 75 feet in elevation above sea level. Ridges are nearly level to gently rolling and side slope ranges to moderately steep. The ridges and side slopes are referred to as the upland soils. Colluvial or local alluvial soils are in swale areas, on toe slopes and in saddle positions of the landscape.

An elevation expert, Cheadle, testified that the property offered no annual income and that the highest and best use for the property was growing timber. He opined that the timber should be first sold and, thereafter, the property could be conveniently partitioned. He demonstrated his partition with a sketch. (Comp. Ex. 3 to Depositions of September 15, 1992.) This sketch divides the road frontage into thirds with straight lines therefrom terminating at the rear of the property, resulting in three parcels of equal acreage and, according to this expert, equal value. This division was based upon the assumption there

were no perc sites. Upon being advised of the three potential perc sites, this expert amended his view to state that "No division . . . should be made . . . unless a . . . drainfield site is included in each of the three equal frontage, equal access parcels . . . ." Cheadle *did not* walk the property.

Cheadle accepted the Bobb appraisal of the timber at $212,000.00 and evaluated the property with the standing timber at $260,000.00, thus giving the real property a value of $48,000.00, or approximately $365.00 per acre. However, this expert testified, if the timber were removed, and before replanting, the real property would be worth $96,000.00, or $725.00 per acre. Thus, this expert apparently concluded the real property was worth twice as much after being clear-cut as before clear-cutting.

The final expert witness, Boggs, likewise accepted the Bobb value of $212,000.00 for the timber, set a total value of $252,000.00, thus giving the real property a value of $40,000.00, or $300.00 per acre. In contrast to Cheadle, this expert testified:

> Given the fact in my opinion that the timber is the most valuable asset this piece of property has, once you remove that timber, the land value is going to go down because you are going to have left over approximately a hundred and thirty-two acres of cut-over timber land that has to be reforested and held for another thirty years before another crop can be cut. My estimation of raw land value, cut-over value, is two hundred dollars per acre.

Referring to the Cheadle sketch of proposed partition, this expert testified that the middle parcel, Number 2, was of greater value for future timber production than parcels 1 and 3, their being of lesser and unequal value *inter se*. The most feasible location of a road to harvest the timber, for both topographical and cost reasons, was on parcel 3, and the construction of that road itself, by enhancing the value of parcel 3, would unbalance equal value for parcels of equal acreage. This expert opined that, while the parcel could be physically divided into equal acreage, it could not be divided in equal value, whether the timber was first removed or not. Boggs *did* walk the property.

"In Virginia, growing trees constitute a part of the soil and are regarded as real estate . . . ." *Staley v. Fisher*, 176 Va. 163, 167, 10 S.E.2d 551, 554 (1940). *See also, Hundley v. Hulber*, 201 Va. 847, 114

S.E.2d 738 (1960). Accordingly, "Timber may be the subject of partition . . . ." 14A M.J. *Partition*, § 8, p. 273, n. 8; 68 C.J.S., *Partition*, § 23, p. 39, n. 40; timber becomes personalty only after the execution of a contract to sever the same. § 8.02–107(2).

Nonetheless, all parties agree that the standing timber cannot be partitioned in kind and, further, that the property with the timber standing likewise cannot be partitioned in kind.

In such circumstances, the commentators note that "[i]f the timber is so situated that a partition of the land does not result in a fair distribution of the timber on it, the timber can be sold separately." 59A Am. Jur. 2d, *Partition*, § 12, p. 18, n. 55, citing *Seawell v. Seawell*, 233 N.C. 735, 65 S.E.2d 369 (1951). "If no division can be made of standing timber without manifest injustice, a sale for the purposes of partition may be ordered." 68 C.J.S., *Partition*, § 127, p. 195, n. 45. *See also, Provident Life & Trust Co. v. Wood*, 96 W. Va. 516, 123 S.E. 276 (1924), 21 A.L.R.2d 618, § 4, p. 622.

Brodie and Emert desire the timber be sold separately from the realty. Brodie wants partition in kind thereafter. Emert seeks either partition in kind or sale thereafter. Snider does not want the timber sold separately from the property and argues that either *ex* timber or not, the property is not amenable to partition in kind.

Included among other authority cited by counsel for Emert and Brodie are *Lucy v. Kelly*, 117 Va. 318, 84 S.E. 661 (1915), and *Bridge v. Snead*, 151 Va. 383, 145 S.E. 338 (1928). In *Lucy*, husband testator's wife received by will one-half interest in fee and the other half for life, with remaindermen, in two non-contiguous tracts. The court held one tract could be assigned in kind to the widow and the second sold.

In *Bridge*, the first commissioners in recommending sale reported that "the several parcels would be so small that none of them would contain sufficient ground to justify anybody buying it as a home and having enough ground to farm." A second set of commissioners also recommended sale because the property was in mountains, "steep in some places," and the parcels "as laid off are long narrow strips."

In reversing the commissioners and ordering partition in kind, the court noted that one of the co-parceners owned "the tract of land immediately adjoining [the parcel to be partitioned], to which he can attach the eight acres . . ." and concluded:

> It is not only the condition of the subject, i.e., the land to be divided, but the situation and interest of the parties involved in the particular suit which should also be considered.

This court does not believe these cases are applicable to the instant case because unlike *Lucy*, there is only one parcel, not two, and unlike *Snead*, no co-parcener, as this court noted above, owns adjacent land.

In 68 C.J.S., *Partition*, § 127, pp. 193–194, n. 33, the commentator states:

> In determining whether land jointly owned is equitably divisible, equality of value as well as of quantity and quality is a criterion so that the relative vendible value assigned to each party shall be proportioned as near as may be to the extent of his interest.

This court can only rule upon the evidence before it. The opinion of the expert Cheadle, that the property is amenable to partition *in equal acreage of equal value*, is not persuasive. And this is the only evidence of partition in kind feasibility.

The variables of value here include the following: (a) the lack or paucity of perc sites, and, if any do exist, their differing proximity to road access; (b) the varying suitability throughout the parcel for its agreed highest and best use as timber land; (c) the enhancement of one portion of the property by the construction of a timber logging road; (d) the topographical differences extending without discernable order throughout the property; and (e) the uneven distribution of "swales and wet spots" on the parcel.

All property can be divided into equal acreage. But all property cannot be divided into parcels of equal value or divided into shares of unequal value with inequality corrected by a charge of money on the more valuable in favor of the less valuable, as in owelty of partition. To differ with this preceding proposition is to render the word "conveniently" meaningless. To overcome the variables of value set forth above would require a physical division necessarily tortuous, and certainly not convenient, and an assignment of value to those divided parcels only speculative.

Snider has met her burden of showing that the property cannot be conveniently partitioned in kind and that a sale will promote the interests of each co-parcener. Accordingly, the property will be partitioned by sale.

"If the court determines . . . that the land is not susceptible to division in kind, the court is given broad powers to deal with the subject as the interests of the parties and the circumstances of the case may require. *Stamps v. Williamson*, 190 Va. 145, 56 S.E.2d 71," cited with approval in *Cauthorn v. Cauthorn*, 196 Va. 614, 624, 85 S.E.2d 256, 261 (1955).

Unless otherwise agreed by the parties, it is suggested that offers be solicited for the timber only or land with timber. A variability among the offers may make possible an agreement between the parties as to whether or not the timber should be first sold. If such agreement is not possible, counsel is directed to advise the court and an *ore tenus* hearing date will be set.