**UNITED STATES of America,
Plaintiff,**

v.

**615.10 ACRES OF LAND, MORE OR LESS, Situate IN GRAYSON ET AL., COUNTIES, COMMONWEALTH OF VIRGINIA, White Top Company and White Top Scenic Corporation, Defendants.**

**Civ. A. No. 70-C-36-A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

May 21, 1971.

W. Harris Grimsley, Dept. of Justice, Washington, D. C., and Birg E. Sergeant, Asst. U. S. Atty., Roanoke, Va., for the U.S.A.

Bradley Roberts, Stant, Roberts & McGowan, Bristol, Va., and John A. Blakemore, Abingdon, Va., for White Top Co., etc.

## OPINION and JUDGMENT

DALTON, Chief Judge.

In the southwestern part of Virginia at the junction of Smyth, Washington, and Grayson Counties rises a majestic mountain, which is known as White Top. Its peak reaches an elevation of 5533 feet above sea level and the property commands spectacular vistas of the surrounding countryside, of which it is a landmark. The United States brought an eminent domain proceeding to acquire this splendid land for the public benefit and thus to preserve its wonders for future generations.

In view of the size and importance of the property, the court deemed it proper to appoint a commission, as provided for

in F.R.Civ.P. 71A(h), to determine its fair valuation. Three distinguished residents of southwestern Virginia, S. H. Sutherland, S. Floyd Landreth, and G. W. Summerson, accepted appointment to the Commission.

The court instructed the Commission on the law and procedures to be used and they then commenced on a diligent investigation of the problem. After mature deliberations upon all of the evidence presented by the parties, the Commission found that $155,635.05 was fair compensation for the property in question. The Commission has prepared an excellent report which exemplifies in every respect its skill and ability and which not only justifies the court's confidence in its appointment, but also excites the admiration of anyone who reads the report.

■ To this award the defendants have filed exceptions which generally contend that the Commissioners failed to take certain elements of value into consideration. In addition it is contended that the Commissioners should not have considered a certain right of way to White Top Mountain over United States Government property. As to this latter point, the transcript indicates that the parties entered into a stipulation on this point, which, if anything, was apparently favorable to the defendants. Therefore, this contention is without merit.

■ The defendants argue that it might well cost an amount almost equal to the award just to construct roads of the kind which already exist on White Top. Even if this contention is true, however, it does not offer relief to the defendants because the critical inquiry is the fair value of the property as a whole and not what it would cost to duplicate the existing characteristics of the mountain. Counsel for the defendants cross-examined the government's witnesses on this point and in addition presented his thoughts to the Commission. The report indicates that the Commission understood and appreciated the quality of the internal access on White Top.

■ Much of the defendants' brief in support of their objections to the report is spent in denying the comparability of sales of other parcels of land in the area which the Commission considered in arriving at its determination. It is argued that the other properties were not comparable because they were not as high in elevation, did not offer the same quality of view as was available from White Top, or were not as accessible from main highways. The court feels that this kind of argument should have been made to the Commission rather than made here. Of course no two properties are exactly alike but it was the function of the Commission to receive evidence of other sales and determine how comparable in terms of market value they actually were. The Commission viewed the other properties in question and received arguments from the defendants concerning differences between the properties. The report offers a full discussion of this question which indicates the Commission's appreciation of its difficulties.

■ In their memorandum in support of their exceptions to the award, the defendants have alleged that one of the commissioners may have been improperly influenced by riding with one of the witnesses for the government to one or more of the hearings. Interestingly enough this point was not raised before the Commission or in the exceptions to the report but for the first time in the defendants' brief. The government has responded to this issue by pointing out that on one occasion the same commissioner also rode with Mr. Blakemore, who is the president of the corporate defendants. While the court is alert to any suggestion of impropriety, it confesses that it is unable to determine any basis for such a suggestion in this case.

In placing this contention in proper perspective, the court recognizes that the proceedings before the Commission were conducted in an informal manner. To view the principal property and other properties which were alleged to be comparable, it was necessary to make several trips of various lengths and a measure

of informality was to be expected. All of the commissioners were distinguished residents of the Western District of Virginia and it is inconceivable to this court that one of the commissioners could have been influenced by riding in a car with a witness of one of the parties. There is certainly no evidence which lends credence to any thought of improper influence, especially since the Commission's award was 60% higher than the estimate made by the witness in question. The complaint made in this case is similar to one made in United States v. 72.71 Acres, More or Less, 157 F.Supp. 401 (D.Md.1957), aff'd, 256 F.2d 669 (4th Cir. 1958), cert. denied, 358 U.S. 931, 79 S.Ct. 319, 3 L.Ed.2d 304 (1959). In that case the dissatisfied landowner complained that one of the government attorneys had ridden in the bus with the jurors to view the property being taken. In denying the objection Judge Chestnut pointed out that the happening was only an incidental matter about which the defendant made no objection at the time.

Perhaps most indicative of the lack of merit to this complaint is the fact that it has been made so late. This circumstance suggests that the objection is actually an afterthought. If this matter was of real concern to the defendants, an objection should have been made at the time to the Commission. In United States v. 72.71 Acres, More or Less, supra, Judge Chestnut held that an objection of this kind came too late when it was first raised in the district court. In a slightly different situation the Supreme Court of Appeals of Virginia has held that failure to object to improper argument either during or at the conclusion of the argument acted as a waiver of any objection. State Highway Commissioner v. Reynolds, 206 Va. 785, 146 S.E.2d 261 (1966). See also Francis v. Southern Pacific Co., 333 U.S. 445, 451, 68 S.Ct. 611, 92 L.Ed. 798 (1948). Similarly, this court is of the opinion that this objection comes too late when it is first made only after the exceptions to the commissioners' report have been filed.

■ Also raised for the first time in the defendants' brief is a complaint that erroneous figures were used in paragraph #1 of the Commission's calculations. Actually the figures which the defendants contend should have been used by the Commission in this method for arriving at value were in fact used by it in another method which was employed. The figures in paragraph #1 which are the subject of complaint are the average prices per acre of the three properties alleged to be comparable with White Top. Of course the use of these figures was appropriate.

The defendants' other arguments actually indicate the lack of substantiality of their objections to the award. The possible erroneous statement of minor and insignificant facts, such as the kind of flower or tree existing on a particular part of White Top, does not detract from the Commission's final finding or demonstrate a lack of familiarity with the mountain. A statement in the report about a lack of a right of way clearly refers only to the lack of a right of way over a particular property and does not imply that White Top is landlocked. These points all concern matters which do not detract from the general validity of the determination.

■ In summary, it is apparent that the defendants were given ample opportunity to present their views. The Commissioners heard extensive evidence, traveled over the property in question, and devoted in total eleven days each of their time to reaching an award. There was a great disparity in the opinions of the witnesses produced by the parties as to the value of the property. Four witnesses for the defendants suggested various figures of which the average was $564,550. On the other hand, the average of figures mentioned by three witnesses for the plaintiff was $105,171.67. Bearing in mind that the valuation of the Commissioners is not to be rejected unless it is "clearly erroneous", United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); United States v. Certain Parcels of Land, 384 F.2d 677

(4th Cir. 1967); United States v. Payne, 368 F.2d 74 (4th Cir. 1966); F.R.Civ. Proc. 71A(h) and 53(e) (2), the court believes that the finding should be affirmed because it is well within the range of competent evidence. The Commission's award is affirmed with interest as set forth in the order entered contemporaneously herewith.

The Commission Report manifestly indicates adherence to the instructions of the court and it reflects a careful and painstaking study of the property and all other factors bearing on the case. The court feels that the report is of such importance that it should be made a part of the court's opinion. It reads as follows:

REPORT OF COMMISSIONERS

TO THE HONORABLE TED DALTON, CHIEF JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA:

Your undersigned commissioners, appointed by your Honor on the 19th day of August, 1970 in the above entitled case to determine just compensation for the tract of land described therein, designated as Tract No. 969, would most respectfully report as follows:

We met at the time and place set forth in the order appointing us.

*Present*

Your Honor, your commissioners, Honorable Birg E. Sergeant, Assistant United States District Attorney for the United States of America, Honorable Harris Grimsley, Attorney for the Department of Justice, Land and Natural Reserve Division, Honorable Bradley Roberts, attorney for White Top Company, and Major John A. Blakemore, the company's president, and Mr. Bob Branson, a court reporter.

Your commissioners were sworn as can be seen by their several oaths in the court file in this case, and were given written instructions herewith filed with this report, and also orally by the court. Then the attorneys for the respective parties outlined what they would present for our consideration, whereupon, we viewed the land to be evaluated. We then returned to the courtroom, heard the evidence, viewed the lands which the government described as sales of comparable property recently made, and adjourned for the evidence to be transcribed and the respective parties to prepare and submit briefs. In the meantime, after notice, we met and certain documents submitted by the parties were filed, viz:

1.   Road Map of Ashe County, North Carolina, marked by Commission as "Exhibit A".

2.   Road Map of Grayson County, Virginia, marked by Commission as "Exhibit B–1".

3.   Road Map of Smyth County, Virginia, marked by Commission as "Exhibit B–2–a".

4.   Road Map of Washington County, Virginia, marked by Commission as "Exhibit B–3–a".

5.   Contract between Department of Agriculture, Forest Service Jefferson National Forest, and White Top Company for right-of-way to the defendant's lands, dated September 11, 1956, marked by Commission as "Exhibit C".

These are filed with this report.

6.   Plastic photographic profile of the region including the property under consideration marked by Commission as "Exhibit E". By reason of its size and rigidity, this was filed with many other unwieldly exhibits at the first oral hearing in the Clerk's Office.

We then adjourned, and a transcript of the evidence at the oral hearing, a copy of the written instruction given by your Honor, and of the briefs of counsel were furnished each of your commissioners, who took their respective copies, and severally at their respective addresses carefully considered them for two days. We then met and for a couple of days more together examined the evidence, briefs and instructions, along with the various exhibits, and on the following day heard oral arguments of counsel. After a

lengthy conference and consideration, we arrived at and determined the amount set forth below as a just compensation for the property taken.

## DESCRIPTION OF THE PROPERTY

To reach "White Top", as the land to be evaluated is called, from the west you motor over a well-engineered smooth paved two-lane very crooked state highway located along the bank of Straight Creek, a clear swift stream, at the base of a deep canyon, walled by bold and almost perpendicular cliffs that rise in naked majesty hundreds of feet above, and down the sides of which in gulch and glen mad waters rush to the ravine below, and there chafe and madden at their base in the stream filled and choked by the shattered fragments riven from the summit. Here and there the hand of nature, the great restorer, has softened the asperities of the scene and clothed in vendure the beauty both of beetling cliff and precipitous gulch. Here the spruce towers in somber majesty, there the laurel, ivy and rhododendron throw their dark mantle over the spectral rocks scattering their fragrance and, anon, the bramble and muscadine mingle foliage and fruit in wild and graceful beauty, caressing with tender tendrils and purple berries some tempest riven or lightning blasted trunk. The summit is crowned with delicious huckleberries and the ground covered with azaleas of every color of the rainbow. For several miles, this wild and savage scene stretches before us in unbroken continuity, except the occasional glimpse of the graceful fawn, leaping along as if to show its skill. Too soon we pass from this wondrous dream, and the majestic outline of the colossal "White Top" arrests our gaze as it lifts its savage head hundreds of feet into the blue sky crowning as it were some gigantic "Stupa" above the unmeasurable rocks, the fallen cliffs and shattered arches of ante deluvian architecture. You then pass for some miles where the rich pastures gently slope upward from the highway along which you drive, admiring the grandeur of the lofty mountain—a glory of Creation.

You next turn to the left and ascend over a well-graded and drained road twenty feet wide without hardtop finish 1.7 miles to a rather bold spring where a hotel burned last winter. At the southern base of this monument, there are about three hundred acres covered with a forest, with no right-of-way over the farm land between it and the highway. Next north, there are nearly three hundred acres which have been cleared so long that no evidence of the original forest can be seen, the few gnarled fruit trees are almost ruined from the neglect, and the timber at the top of the mountain is dying. At the junction of Grayson, Smyth and Washington Counties on top of the mountain is .8 acre leased to the U. S. Government for $1,300.00 per year, and not far away is evidence of an abandoned broadcasting station. There is a dilapidated abandoned restaurant and dance hall, but it has roads well-adapted for access to all parts of the cleared land, and is typical of the abandoned farms of this hilly section, since the advent of good roads and easy access to the suburbs and cities where the highways and living conditions have rendered so many former wealth-producing farms without labor to cultivate them. North of the crest the land is too steep and rough to be of much value, but there is a considerable portion at the northeast which is desirable for dwellings.

This is in a rural mountainous region, sparsely settled (Ev. 109), where population is low (Ev. 193), without any industry, and farming not very encouraging. The closest store and filling station is five miles away, and does not appear prosperous, but Major Blakemore, the principal owner of the 615.10 acres, who has seen a considerable part of the world, said, "I don't know of any other mountain anywhere in the Eastern part of the United States that has the scenic value that White Top has" (Ev. 87). He also said he did not want to spend much money there to make the mountain accessible "until we had a large enough vol-

ume of people to justify" (Ev. 88–9, 97). White Top is the second highest peak in Virginia, being 5,520 feet high as compared with Mt. Rogers about ten miles northeast which is 5,729 feet. It is not farming land, although in years past cattle and sheep were grazed thereon (Ev. 66). Its highest and best use is "a sports and recreational area in combination with a high class residential area" (Ev. 21–2, 110–1), "for a scenic area" (Ev. 66, 52), and well-watered. It is about forty-five miles west of Blue Ridge Parkway. From it, you can view miles around and as far as the eye can reach the high peaks, some green and smooth with grass and others covered with forests as thick as bubbles on soapy water. Just east of White Top is a recreation area of 90,000 acres, and southeastward are miles and miles of highly desirable land suitable for development, presently undeveloped. Any way you look the unusual and unique beauty is overwhelming with grandeur that elates and pleases (Ev. 43).

## ARRIVING AT OUR AWARD

When we look at the difference in the values the witnesses place on this land, there is a wide breach. The defendant examined four witnesses, one of whom valued the property at $418,000.00; two at $615,100.00 each; and the other at $610,000.00, or an average of $564,550.00. The plaintiff examined three witnesses, the lowest of whom valued the land at $92,265.00, the highest $125,500.00, and the other $97,750.00 or an average of $105,171.67. Then how are we to harmonize this vast difference of $459,378.33? Every witness impressed the commissioners with his sincerity and desire to give his testimony honestly and truthfully, and his qualification as a witness was eminently shown.

The property in question had never been sold on the open market so far as the evidence discloses; therefore, the court has given us four guides of inestimable value in aiding us. By instruction number 7 the court has told us that the value of the property to the defendant or to the government is not the question before us. Therefore, the value of the property to the parties can have no weight. As the property itself has never been sold, by instruction number 6 the court has told us that sales of similar or comparable property reasonably near in time to the date of the taking is evidence of the fair market value, which we may consider. By instruction number 11 the value of opinions expressed by a witness cannot be any greater than the facts on which they are based. By instruction number 14 we are told the burden of proof is on the defendant to prove by a preponderance of the evidence, that is, evidence which is more convincing or has the greater probability of the amount of compensation to be awarded.

With this, let us examine the testimony.

## DEFENDANT'S TESTIMONY

1. Defendant's witness, Whitman, gave his opinion of just compensation as $418,000.00. He had examined the property and testified that its highest best use was for residential and sports development—skiing, hunting, hiking. He said that he had not made any investigation of the possibility for sports or skiing and would not know how much land it would take (Ev. 24). He further testified that he had looked for comparable properties and found a tract of 41.5 acres which had a dwelling on it and it was being grazed, and as a comparison it had an elevation of approximately 5,000 feet. He also said he heard of another tract of 175 acres, but he did not go upon it. He further testified there had been no history of subdivision in that immediate vicinity. This certainly gave us no sufficient evidence of sales of property comparable to the 615.10 acres to be valued by us.

2. Defendant's witness, Richardson, had abundant opportunity to be familiar with the property here to be valued (Ev. 40) and had been paid $551.00 per acre for some land for Mt. Rogers State Park 10 miles away, and his brother sold some for the same purpose, neither of which had any scenic value and had an altitude

in the neighborhood of 3,200 feet. He had no other comparison, so we feel that his evidence is of insignificant value on the question before us.

3. A. T. Booher, while a very active man in business and trading in real estate, said the property under consideration was high-class for development due to the beautiful views, unlimited access for miles and miles in Kentucky, Tennessee, North Carolina and Virginia, and valued the property under consideration at $610,000.00 (Ev. 53). He showed considerable information of the property in question, but when asked for sales to compare it with, answered, "It is up there by itself. There is nothing I know of to compare it with. There are a lot of little mountain peaks stuck here and there in Kentucky, West Virginia and North Carolina, but there is nothing that has the view this has" (Ev. 61–2). He further testified that he had not looked for any areas in Virginia or North Carolina sold for recreation purposes (Ev. 63). We submit this furnishes no sale to compare with the property under consideration.

4. John A. Blakemore, president of the Company which owns the land under consideration, in his testimony before us, and in a report he made to the directors of the Company filed with the Company's answer to interrogatories which we have considered as part of the evidence, said that commencing in 1891 the possibilities of the future of this property has been considered by its owners for its "famous, majestic, panoramic view of seven states" (Report to stockholders), but neither the Company nor any of the stockholders could advance the funds necessary to accomplish it. During this time many people have visited White Top and festivals have been held there occasionally, and numerous requests to sell lots have been made, but it seems these—in part, at least—came from a vandal type of people and their offers were rejected, awaiting large enough development to afford proper police protection (Ev. 81–2). Mt. Rogers development, called a "natural wonderland," is just ten miles east. No doubt the owners of this White Top area have great hopes, but one witness for the defendant puts it ten years in the future. Major Blakemore, who has been in close touch for more than half a century, has not been able to find a single sale that aids his value.

## PLAINTIFF'S TESTIMONY

The plaintiff called three well-qualified witnesses whose valuations are as follows: Thompson, $92,265.00; Price, $97,750.00 and Jones, $125,500.00. Each has a different approach, and several comparative sales, but all testified as to five of the same tracts. None of the tracts has as high an altitude as the land in question, but all have superior acreage, but the accesses are not equal. As they are compared by each witness, we will notice them separately.

Thompson—page 104. The property is in the Mt. Rogers recreational area which encompasses approximately 90,000 acres. After studying the resort areas and trends, and the various recreational programs commencing down in North Carolina, where it started and taking a view and examination on the ground, he visited a tract of 1,017.75 acres approximately four air miles from White Top sold in 1967 for $141.00 per acre. It has a good soil road approach with an elevation ranging from 4,500 to 4,900 feet, with approximately 300 acres cleared on top, an abundance of water, and compares favorably with White Top. An elevation of between 4,000 and 5,000 feet is more desirable for development purposes.

The next is a tract of 953.5 acres approximately eight air miles from White Top, bought in April 1970 for $195,-000.00 or $205. per acre. Its elevation ranges from 3,800 to 4,200 feet. It is just as acceptable for recreation as any other mountain range (Ev. 131), but with roads inferior to White Top. It has a commanding view of the area.

Next is a tract of 1,747 acres bought in 1969 for $83,250.00, or $48.00 per acre, 90 miles from White Top—the highest

point of which is 4,223 feet, with a hard surface road near U. S. Rt. 23 and adjoining town of Norton.

Four tracts were viewed by Mr. Thompson from the air and aerial photographs taken and introduced, and each was examined by going upon it. Mr. Thompson investigated 30 to 40 sales, but he found these four comparable, especially as to size being 696, 1,017.75, 953.5 and 1,747 acres respectively, which by reason of acreage shows them more valuable in comparison, with three of them within a radius of fifteen miles and the other ninety miles. The sale number 1,017.75 tract is within four air miles of White Top Mountain. It has a mountainous elevation ranging from 4,500 to 4,900 feet, which the evidence shows is more desirable for development (Ev. 115), and of course it is nearer in minimum size—1,500 acres for year-round development, and these tracts have a good means of access (Ev. 115) over a soil road (Ev. 124). There is approximately 300 acres cleared on top of the mountain with an abundance of water and grass that makes the cattle fat, and compares favorably with White Top. It is appealing and just as acceptable as any mountain range. Tract No. 4 on Pound Mountain was bought as 1,104 acres for $195,000.00 or $177.00 per acre, but on survey there was only 953.5 acres or $205.00 per acre.

It appears to us that the word "unique" which means "without a like or equal, single in kind" is over-emphasized in the testimony. Of course no two pieces of property are exactly alike, but that does not mean they are *unique*. If so, all pieces of land are unique. There are but two things about White Top that are unequaled—location and internal access; but there are so many other things in which the resemblance is so much alike that it is hard to distinguish between them as to which exceeds the other. The evidence here seems to us to establish that as a whole the 1,747 acre tract is superior to White Top for development purposes. White Top, while desirable, is exceeded in altitude by Mt. Rogers by 209

feet. When we admire the grandeur and beauty of White Top, we can turn our heads in any direction and find something similar, and in many respects more engaging and more appealing. If we will look at the relief map "E" filed with the Commission on November 10, we can envision the panoramic view of the mountains for miles around with many aspects more engaging than White Top. The whole region is one of beauty and grandeur which defies description. The witness Price gives a hint of this: "The unusual and unique beauty of the mountains of North Carolina, Tennessee and Virginia offer varied and deep potentialities" (Ev. 178).

It would be too tedious and smack of argument to go into more detail. Witness Price, among many other convincing statements, epitomized in a few short sentences enough to give a glimpse of the whole. After stating that he analyzed twenty-six sales and inspected diagrams, took pictures and discussed fourteen of them in his report (to counsel, we suppose) said, "These fourteen sales run from 105 acres up to 1,747 acres, all of them since 1966. The market value of these lands as indicated by these sales range from $25.00 an acre to $205.00 per acre. The other interesting thing to me, the sum total of these fourteen sales was 7,860 acres and the confirmed sale price of that 7,860 acres was $775,000.00 . . . In all of these sales that I am talking about they are probably within fifteen miles as the crow flies, except the one up in Norton and that is probably 65 or 70 mile. They range from about two and a half or three miles up to 15" (Ev. 179). He further testified, "Between the areas I am talking about there are miles and miles of highly desirable land for that that is not developed yet, between White Top and there", "and they have the potential for this recreational development" (Ev. 181).

The witnesses appeared to us of equal qualifications, honesty, veracity and desire to tell the whole truth without any bias, but Messrs. Blakemore, Booher and Richardson had viewed the property in

question more often and minutely. However, as they did not disclose as much familiarity to sales and attention to sales of like property, we have to rely on other like and comparable sales in that section. All are so much alike that in comparing them, it is impossible to enumerate their likenesses. However, we have concluded even without considering on whom the burden of proof lies that taking as a whole, we attach more weight to the testimony of the government's witnesses than those of the defendant.

## CONCLUSION

When oral testimony was concluded, there was some uncertainty about the right-of-way to the 615.10 acres (Ev. 194–5; 198–201). Just before argument began our chairman stated to the attorneys that on November 10, Major Blakemore filed with the Commission a writing marked "Exhibit C" which admitted the Government had title to this right-of-way and the defendant only had a revocable right-of-way over it; whereupon, counsel for plaintiff produced a writing which admitted the defendant had a right-of-way twenty feet wide to its land and requested the commissioners to accept that as the rights of the parties to said right-of-way, and your commissioners have so treated it in their award, marked "Exhibit Z", and it is herewith filed with this report.

There was some uncertainty concerning the value of the timber on the tract of land to be appraised, at the oral hearing (Ev. 18), and the attorneys stated they would agree as to that. Before oral argument commenced, our chairman stated that he had examined the answer of the defendant to the interrogatories as a part of the evidence and had found a written contract of sale of the timber before this proceeding was instituted, and as he understood the decisions of our Supreme Court of Appeals, that converted the timber into personalty, and as we were only to appraise the real estate, we could not consider the timber, Hurley v. Hurley, 110 Va. 31 [65 S.E. 472];

Hurricane L. Co. v. Lower [Lowe], 110 Va. 380, 66 S.E. 66. Counsel for the government then produced an agreed statement showing the value of this timber on the lands below the 5,000 foot elevation, and requested that we include the value of the timber below that line and above in our report, which we have. This writing is marked "Exhibit Y" and herewith filed as part of our report. It will be noted that this exhibit shows the value of the timber below the line to be between $10,050.00 and $10,955.00. As the burden is on the defendant, we adopt the amount as $10,400.00. The amount of our award has given us serious concern. We figured it several ways and the results came out practically the same each time. For instance, after eliminating the 1,747 acre tract because it was ninety miles away and was not shown to be within the area which this improvement is, we agreed the following five ways would be fair value.

1. Add twenty-five percent increase for accessibility of White Top to the comparative value of the estimates of three government's witnesses: $130.00 for Thompson; $140.00 for Price; $205.00 for Jones, making an average of $158.00. Adding twenty-five percent, or $39.50, you have $197.50. Multiply $197.50 by 614.3.

The .8 acre is producing $1,300.00 annually. The almost universal rule is that the rent must amount to ten per cent of the value of the land producing the rent. Thus we fix the value of this .8 acre at $13,000.00. As the value of real estate is not fixed but lies only in opinion, in what follows we will find the value of the land, exclusive of this .8 acre and the timber, then add these items. Proceeding thus we have:

1. $197.50 multiplied by 614.3 equals $121,324.25.

| Then add: | | |
|---|---|---|
| 614.3 acres | | $121,324.25 |
| .8 acre | | 13,000.00 |
| Timber below 5,000 feet | | 10,400.00 |
| Timber above 5,000 feet | | 6,000.00 |
| | Total — | $150,724.25 |

2. Taking Price's figures, slightly modified (Ev. 192): Ten acres for valuable dwelling site as testified by Blakemore (Ev. 83), or $30,000.00, we have:

| | |
|---|---|
| 289.3 acres at $250.00 per acre | $72,325.00 |
| 315.0 acres at $75.00 per acre | 23,625.00 |
| 10.0 acres at $3,000.00 per acre | 30,000.00 |
| .8 acre | 13,000.00 |
| Timber below 5,000 feet | 10,400.00 |
| Timber above 5,000 feet | 6,000.00 |
| Total — | $155,350.00 |

3. Lump the entire tract at $250.00 per acre as some witnesses did:

$153,775.00

4. Take the average price per acre of White Top property, by government witnesses: Thompson—$150.00; Jones—$204.00; Price—$160.00, or an average price of $171.00 per acre. Add 25%, or $42.75 per acre for access, making a total of $213.75 per acre. Multiply $213.75 by 614.3.

| | |
|---|---|
| 614.3 acres at $213.75 per acre | $131,306.63 |
| .8 acre | 13,000.00 |
| Timber below 5,000 feet | 10,400.00 |
| Timber above 5,000 feet | 6,000.00 |
| Total — | $160,706.63 |

5. Take the highest price per acre for which any of the comparative tracts were sold (953.5 acres at $205.00 per acre), supra 7. Add twenty-five per cent for lack of accessibility ($205.00 plus 25% equals $256.25 per acre), and multiply $256.25 by 615.1, giving $157,619.38.

Average for five examples is $155,635.05.

Therefore, we determine the amount of $155,635.05 is the just compensation for the property designated as 615.1 acres.

Respectfully submitted this 11th day of January, 1971.

s/_____
S. H. Sutherland, Chairman
s/_____
S. Floyd Landreth, Commissioner
s/_____
G. W. Summerson, Commissioner

We further certify the costs for making this report are as follows:

| | | |
|---|---|---|
| S. H. Sutherland, Chairman | | |
| 11 days, including the 2 at home | $1,100.00 | |
| Compiling this report | 100.00 | |
| Total — | $1,200.00 | |
| S. Floyd Landreth, Commissioner | | |
| 11 days, including the 2 at home | $1,100.00 | |
| G. W. Summerson, Commissioner | | |
| 11 days, including the 2 at home | $1,100.00 | |

s/_____
S. H. Sutherland, Chairman
s/_____
S. Floyd Landreth, Commissioner
s/_____
G. W. Summerson, Commissioner

Bearing in mind the weight to be given to the report of Commissioners, and believing that the award is fair to all parties concerned, it is adjudged and ordered that the exceptions be and the same are overruled, and the report is hereby confirmed.